[No. 11765. In Bank. — June 1, 1889.]

LEOPOLD KAHN, PETITIONER, v. BOARD OF SUPERVISORS OF THE CITY AND COUNTY OF SAN FRANCISCO, RESPONDENT.

SAN FRANCISCO — MONTGOMERY AVENUE ACT — JURISDICTION — INSUFFICIENT PETITION. — A petition signed by a majority in frontage of the owners of the property described in section 4 of the Montgomery Avenue act of 1872 was necessary to give jurisdiction to the board of works to organize and proceed under the act, and to give the county court jurisdiction under its provisions.

ID. — SIGNATURES TO PETITION — MANDATORY STATUTE — EXECUTORS AND ADMINISTRATORS — CORPORATION — AUTHORITY OF PRESIDENT AND SECRETARY. — The requirement of the act of 1872 that the petition for the improvement of Montgomery Avenue shall be signed by owners of a majority in frontage, whose names are named on the last preceding assessment roll, is mandatory, and no signatures of persons whose names do not there appear can be regarded by the courts. Signatures by executors and administrators must be rejected as unauthorized. The signature of the president and secretary of a corporation must also be rejected, in the absence of proof of authority from the board of directors.

ID. — DECISION OF COUNTY COURT AS TO JURISDICTIONAL QUESTION OF FACT — JURISDICTION OF SUBJECT-MATTER. — The decision of the county court as to its jurisdiction was not conclusive of the jurisdictional question of fact whether the petition for the improvement of Montgomery Avenue was signed by a majority or only by a minority of the owners designated in the statute.

ID. — MUNICIPAL BONDS — RIGHTS OF BOND-HOLDERS — MANDAMUS. — The rights of the holders of Montgomery Avenue bonds as to the question of jurisdiction over the proceedings for the improvement of Montgomery Avenue, under the act of 1872, are not different from those of tax-payers. The bond-holder is bound to inquire as to the existence of the facts conferring jurisdiction to proceed under the law. A purchaser of municipal bonds is bound by the law under which they are issued, and the law informs him that the bonds impose no obligation unless issued according to the law. *Mandamus* will not lie to compel the levy of a tax to pay municipal bonds, when it appears that the jurisdictional facts to authorize their issuance are wanting.

PETITION for a writ of mandate to the board of supervisors of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*D. M. Delmas,* and *A. L. Rhodes,* for Petitioner.

The judgment of the county court is a conclusive adjudication of the facts on which its jurisdiction depended. (Freeman on Judgments, sec. 523; *People* v. *Hagar,* 52 Cal. 171; *Irwin* v. *Scriber,* 18 Cal. 499; *In re Grove Street,* 61 Cal. 438; *Ryan* v. *Varga,* 37 Iowa, 79; *Monell* v. *Dennison,* 17 How. Pr. 422; *Board of Commissioners* v. *Hall,* 70 Ind. 469; *Dyckman* v. *Mayor,* 5 N. Y. 434; *Evansville etc.* v. *Evansville,* 15 Ind. 395; *Forbes* v. *Hyde,* 31 Cal. 342; *Ricketts* v. *Spraker,* 77 Ind. 371; *Seaman* v. *Duryea,* 10 Barb. 528; *Knox Co.* v. *Nichols,*

14 Ohio St. 271; *King* v. *Pool,* 36 Barb. 242; *Halleck* v. *Moss,* 22 Cal. 266.) The petition was in fact signed by the majority of owners of frontage. The decision of the county court was at least *prima facie* evidence of that fact. (*Mulligan* v. *Smith,* 59 Cal. 206; *Potter* v. *Merchants' Bank,* 28 N. Y. 641; 86 Am. Dec. 273; *Barber* v. *Winslow,* 12 Wend. 101; *Sears* v. *Terry,* 26 Conn. 273.) The North San Francisco Homestead and Railroad Association, having by formal resolution authorized the president to spend five hundred dollars to aid in securing the passage of the statute, and it appearing that the directors knew and acquiesced in the signatures of its president and secretary to the petition, the absence of a formal resolution cannot affect the validity of their signatures. (*Sherman* v. *Fitch,* 98 Mass. 64; *Pixley* v. *U. P. R. R. Co.,* 33 Cal. 183; 91 Am. Dec. 623; *Mayor* v. *Bouldin,* 23 Ind. 374.) The judgment of the county court being *prima facie* evidence of authority of all the signatures, they must be taken to be authorized, unless the contrary distinctly appears. There was no attempt to discharge the burden of proof which rested upon the respondents to show that authority did not exist. The city is estopped by retention of the benefits purchased with the bonds. (Jones on Railroad Securities, sec. 282; *Pendleton Co.* v. *Amy,* 13 Wall. 297; *City of Burlington* v. *Gilbert,* 31 Iowa, 356; 7 Am. Rep. 143; *County of Ray* v. *Van Syckle,* 96 U. S. 675, 682; *Commissioners* v. *January,* 94 U. S. 202; *Supervisors* v. *Schenck,* 5 Wall. 772; *Commissioners* v. *Aspinwall,* 21 How. 539; *Bissell* v. *City of Jeffersonville,* 24 How. 287; *Moran* v. *Commissioners,* 2 Black, 722; *Meyer* v. *Muscatine,* 1 Wall. 384; *Van Hostrup* v. *Madison City,* 1 Wall. 291.) The city is estopped by the payment of interest on the bonds for a period of seven years. (*County of Clay* v. *Society for Savings,* 104 U. S. 579; *Johnson* v. *Stark Co.,* 24 Ill. 90; *Keithsburg* v. *Frick,* 34 Ill. 421; *Supervisors* v. *Schenck,* 5 Wall. 772.) The judgment of the county court is conclusive as to the constitutionality

of the act. (*Lent* v. *Tillson*, 72 Cal. 404; *Hallock* v. *Dom-iny*, 69 N. Y. 238; *Arnold* v. *Shields*, 5 Dana, 18.) The city, having accepted the avenue, is estopped to deny the validity of the law or the regularity of the proceedings. (*Ferguson* v. *Landram*, 5 Bush, 230; 96 Am. Dec. 350; *Bidwell* v. *City of Pittsburg*, 85 Pa. St. 412; 27 Am. Rep. 662; *Matter of Cooper*, 93 N. Y. 507; *Daniels* v. *Tearney*, 102 U. S. 415; *Matter of Woolsey*, 95 N. Y. 135.) The bond-holders are protected by the decisions in favor of the constitutionality of the act existing at the time of the purchase of the bonds, without reference to subsequent decisions. (*Doyle* v. *Austin*, 47 Cal. 353; *Gelpcke* v. *City of Dubuque*, 1 Wall. 175; *Havemeyer* v. *Iowa Co.*, 3 Wall. 294; *Thomson* v. *Lee County*, 3 Wall. 327; *Mitchell* v. *Burlington*, 4 Wall. 270; *Lee County* v. *Rodgers*, 7 Wall. 181; *City* v. *Lamson*, 9 Wall. 477; *Olcott* v. *Supervisors*, 16 Wall. 678; *Supervisors* v. *United States*, 18 Wall. 71; *Douglas* v. *Pike County*, 101 U. S. 677; *Taylor* v. *Ypsilanti*, 105 U. S. 60.)

*Philip G. Galpin*, and *George Flournoy, Jr.*, for Respondents.

The petition was not signed in fact by the majority in frontage. The government reservation cannot be included in the district of assessment. Undivided intersest cannot be counted as a fractional part of frontage. The signatures of executors, administrators, and unauthorized agents and officers of corporations must be rejected. (*Mulligan* v. *Smith*, 59 Cal. 225.) The petition of the majority of the required frontage is essential to the legality of the proceedings. (Cooley on Taxation, 464, 465; *Sharp* v. *Spier*, 4 Hill, 81; *Graves* v. *Otis*, 2 Hill, 466; *Sharp* v. *Johnson*, 4 Hill, 97; 40 Am. Dec. 259; *People* v. *Spencer*, 55 N. Y. 1; *Vosburgh* v. *Welch*, 11 Johns. 175; *Adkins* v. *Brewer*, 3 Cow. 206; *Bloom* v. *Burdick*, 1 Hill, 130; 37 Am. Dec. 299; *People* v. *Smith*, 55 N. Y. 138; *Damp* v. *Town of Dane*, 28 Wis. 423; *Pittsburg* v. *Walter*, 59 Pa. St.

365.) The judgment of the county court does not conclude inquiry as to the jurisdictional facts. (*Noyes* v. *Butler*, 6 Barb. 613; *Hard* v. *Shipman*, 6 Barb. 621; *Wright* v. *Douglass*, 11 Barb. 111; *Craig* v. *Andes*, 93 N. Y. 409; *Henderson* v. *Mayor*, 8 Md. 153; *Mulligan* v. *Smith*, 59 Cal. 231; *Zeigler* v. *Hopkins*, 117 U. S. 683; Code Civ. Proc., secs. 1916, 1917, 1978; *Liebman* v. *San Francisco*, 11 Saw. 147.) The board of supervisors could not by their acts affect the liability of the city upon bonds issued by the board of public works. (*Liebman* v. *San Francisco*, 11 Saw. 147.) Municipal corporations can only act through their accredited agents, and are not estopped, like individuals, whose acts are *sui juris*, by the acts of agents beyond the scope of their powers. The Montgomery Avenue act was unconstitutional. (*Taylor* v. *Palmer*, 31 Cal. 240; *People* v. *Lynch*, 51 Cal. 23; 21 Am. Rep. 677; *Brady* v. *King*, 53 Cal. 44; *Schumacker* v. *Toberman*, 56 Cal. 508.) There is no proof that plaintiff purchased relying upon the decision in *Doyle* v. *Austin*, or that he purchased after that decision was made.

THORNTON, J. — This is an original proceeding in this court, asking for a writ of mandate to compel the board of supervisors of the city and county of San Francisco to levy a tax for the payment of interest on the Montgomery Avenue bonds. The action is brought by the holder of several of the bonds mentioned, and the levy sought to be ordered is to be made on a certain district of land situate in the city and county aforesaid, described in the fourth section of an act of the legislature of this state, approved the 1st of April, 1872, passed for the purpose of opening and establishing a public street in the city and county of San Francisco, to be called Montgomery Avenue, etc. (Stats. 1871–72, p. 911.)

For the purpose of opening and establishing the street, a strip of land was described in the first section of the act, to be taken to that end. By the fourth sec-

tion of the act, the district on which the cost of opening the street was to be assessed was fixed and described.

The street improvement above mentioned was to be carried out through the agency of a board of public works, which was created by section 19 of the act, and consisted of the mayor, the tax-collector, and the city and county surveyor of the city and county of San Francisco. This board so constituted was authorized, empowered, and directed to perform all and singular the duties enjoined by the act upon the board of public works.

It was prescribed by the fifth section of the act that whenever the owners of a majority in frontage of the property described in section 4, " as said owners are or shall be named on the last preceding annual assessment roll for the state, city, and county taxes, shall petition the mayor of said city and county in writing, for the opening of Montgomery Avenue, according to the provisions of this act," the board of public works "shall proceed to organize by the election of a president." Upon this organization having been made, the board was required to proceed to the work designated in the statute.

In section 6 of the act it was provided that the " board shall also proceed to ascertain and determine and separately state and set down in a written report a description of the several subdivisions and lots of land included in the district defined in section 4 of this act, following, when possible, the descriptions and deeds and other instruments filed with said board; and opposite to such description shall set against each lot or subdivision the sum or amount in which, according to the judgment and determination of said board, the said lot or subdivision has been or will be benefited by reason of the taking and opening of said avenue relatively to the benefits·therefrom accruing to the other lots or subdivisions respectively within said district. Said board shall also set

against each lot or subdivision as aforesaid the names of the owners, occupants, and claimants thereof, so far as the same can be ascertained conveniently by said board. The said board shall adopt a general map or plan of the said Montgomery Avenue, and of the lands herein declared to be benefited thereby, and it shall also adopt a map or maps of each block or piece of land taken for said avenue, and also the property injured thereby, and also each lot and subdivision of land liable to be assessed to pay the costs and expenses of opening said avenue as the same are defined in this act. Such report, as soon as the same is completed, shall be left at the office of said board daily, during ordinary business hours, for thirty days, for the free inspection of all parties interested, and notice that the same is so open for inspection for such time and such place shall be published by said board daily for twenty days in two daily newspapers printed and published in said city and county."

It is provided by section 7 that "any person interested in any piece or parcel of land situated within the district defined and described in section 4 of this act, or in any of the lands taken for said avenue, or in any improvements damaged by the opening of said avenue, feeling himself aggrieved by the action or determination of the said board, as shown in said report, may, at any time within the thirty days mentioned in section 6 of this act, apply by petition to the county court of the city and county of San Francisco, setting forth his interest in the proceedings had before said board, and his objections thereto, for an order on said board requiring it to file with said court the report of said board, and such other documents or *data* as may be pertinent thereto in the custody of said board and used by it in preparing said report. Said court is hereby authorized and empowered to hear said petition, and shall set the same down for a hearing within ten days from the date of the filing

thereof; and the party filing said petition shall, on the day he files the same, serve a copy thereof on at least one of the members of the board of public works, and said board may appear, by counsel or otherwise, before said court in response to said petition.  Said board may file a written answer to said petition with said court. Testimony may be taken by said court upon said hearing, and the process of the court may be used to compel the attendance of witnesses and the production of books or papers or maps in the custody of said board or otherwise. It shall be in the discretion of said court, after hearing and considering said application, to allow said order or deny the same; and if granted, a copy thereof shall be served on said board, and it shall proceed to obey the same according to the terms of the order to be prescribed by the court.  But in case no such petition shall be filed with said county court within the time above limited for the filing thereof, the said report shall be presented by the said board to the said county court, with a petition to the court that the same be approved and confirmed by the court."

The section (seventh) then proceeds to declare that the court mentioned above shall have power to approve and confirm said report or refer it back to the board with directions to alter or modify the same in the particulars specified by the court, and the board shall thereupon proceed to make such alterations and modifications, and when so made, the county court should approve or modify the report.  By the same section an appeal was allowed to this court within a specified time by any party dissatisfied with said report, or any part thereof, who shall have filed a petition to the county court as above provided.

After the passage of the act above mentioned a petition in writing was presented to the mayor of the city and county for the opening of Montgomery Avenue. This petition was signed by several thousand persons

who were owners of frontage of the property described in section 4, above referred to, as said owners were named on the assessment roll referred to in section 5 of the said act.

On the presentation of this petition to the mayor, he made and attached it to a certificate that it had been signed by the names of a majority in frontage of the property, as required by the act of 1872. This certificate bore date on the nineteenth day of June, 1872, and on the next day the board of public works was organized by the officials above named. This board subsequently proceeded to the performance of the duties required by the act, made up the report required by the sixth section, which remained in the office of the board for the period of time required by the act, for the free inspection of all persons interested, and notice that the report was so open for inspection was published as required by the said sixth section. On the second day of November, 1872, the report was presented to the county court above named, with a petition to said court that it do approve and confirm said report, and no objections then appearing to the report, it was, on the fourteenth day of November, 1872, approved and confirmed.

It is contended that the proceedings taken by the board of public works, and had in the county court, were without jurisdiction and void, for the reason that the names of a majority in frontage of the property described in section 4 of the act of 1872, required by section 5 of the same act, did not sign the petition to the mayor of the city and county of San Francisco.

That a petition signed by a majority of the owners designated above was necessary to give the board of public works jurisdiction to organize and proceed under the act, we have no doubt. This point was fully considered and determined in *Mulligan* v. *Smith*, 59 Cal. 206. This ruling we approve and adhere to. We also approve of the ruling made in the case cited, that the mayor was

not charged with the duty of determining whether the petition was signed by the required majority, and that his decision to that effect did not conclude or estop any one from disputing and showing that, in fact, the petition was not signed by the required majority.

The question whether the petition was in fact signed by such majority is here presented for decision. We have examined the evidence and weighed the arguments on this question, and are of opinion that the petition was not signed by such majority as the provisions of the act required.

The learned counsel for the petitioner has presented in an elaborate brief his view of the question. He estimates the entire frontage of the district to be 424,096 feet, one half of which is 212,048. The majority required in this view would be 212,049 feet. According to the contention of the learned counsel, the owners of 212,965.7¼ feet of frontage did sign the petition.

But there are included in this contention of counsel certain signatures, which will be found in the record on pages 147, 148. These signatures are set forth in a table designated by the letter G, printed on the pages of the record just above given. This table sets forth the signers of the petition, whose names are other than those to whom the property was assessed on the assessment roll mentioned in the fifth section of the act of 1872.

It will be observed that the act (section 5) requires that the petition to the mayor shall be signed by the "owners of a majority in frontage of the property described in section 4 of this act, as said names are or shall be named in the last preceding annual assessment roll for the state, city, and county taxes."

The requirement of the above is, that the same persons who are assessed on the assessment roll designated by the act shall sign the petition. This is the nature of the legislative requirement, and the courts are not at liberty to disregard it. We are bound to heed this

legislative mandate, and the plain and manifest meaning of the language employed inhibit us from holding that the signers whose names are set forth in table G are such as are required by the act referred to.

These signers, which are included in the view of petitioner's counsel, and which go in his contention to make up the majority required, represent 6,050¾ feet, and deducting these from the number of signers, according to his calculation, the result would be that the number of feet signed for would fail of a majority by over five thousand (5,132.5½). The signatures by executors, administrators, and agents, counted to make the majority by petitioner's counsel, must also be excluded. We hold that they must not be counted, for the reasons given in the opinion of Mr. Justice McKee in *Mulligan* v. *Smith*, 59 Cal. 206. In relation to these signers of the petition, the following language, which we adopt, is used in the opinion:—

"Executors and administrators are but the legal personal representatives of the decedents whom they represent. They are but agents of their constituents, created by law, whose duties and powers are prescribed by law, whatever they do must be done according to law, and within the authority of the law; for the acts of an agent are binding only when done within the scope of the authority conferred upon him. In any transaction in which executors or administrators pretend to act as such, they cannot create any liability on the estate of which they are the representatives. They have no power to charge, or encumber, or sell and convey the real property of the estate, unless authorized by the law under which they are acting. In favor of such an act there is no legal presumption. If it purports to be done by authority, the authority should be produced. The signatures of the executors, administrators, and agents to the petition were, therefore, ineffectual as signatures of the frontage for which they signed."

. We are also of opinion that the signature of the North San Francisco Homestead and Railroad Association, the frontage of which amounted to 41,510.7, should be stricken out. This was signed for by the president and secretary, as we are convinced by the evidence, without competent authority. In the face of the evidence in the record, we cannot presume that the parties signing had authority so to sign. We see no ground in the evidence for presuming that the president and secretary of the corporation had authority to affix the signature of the corporation to the petition. The affixing a signature to such a paper as the petition was no part of the duties devolved on the president and secretary of the corporation. No such duties appear by the evidence to have appertained to the officers mentioned. Under these circumstances the power to authorize the affixing of the name of the corporation to the petition rested with the board of directors, as managing agents of the corporation, to be exercised by their direction.

We are of opinion that in any view which we are justified in taking of the question that the petition was not signed by the owners of the majority of the frontage, as required by the act of the legislature.

But it is argued that the county court having decided as it did, that the required majority of owners had signed the petition, such determination is conclusive on all parties concerned, and cannot be again controverted.

This point was made and decided by this court in *Mulligan* v. *Smith, supra,* and we do not feel inclined to disturb that decision.

It is unnecessary to discuss the question again, as we are satisfied with the conclusion there reached, and are willing to adhere to the ruling there made.

· We cannot see that it should make any difference in our rulings on the questions just passed on, that the action in *Mulligan* v. *Smith* was brought against a prop-

erty owner and tax-payer by a purchaser at a sale made for non-payment of the tax claimed under the provisions of the act of 1872, while here the action is brought by a bond-holder.

The question of jurisdiction was to be alike looked to by the tax-payer and the bond-holder, and the same facts were to be examined by each. The same record was to be considered by bond-holder and tax-payer. If the facts did not show jurisdiction as to the tax-payer, we cannot see how they showed jurisdiction as to the bond-holder. The legislature intended that in every case the jurisdiction to exercise the powers conferred by the act of 1872 should depend on the existence of the jurisdictional fact, viz., that the petition was signed by the required majority of owners, and if the petition was not so signed, the board of public works should have no jurisdiction to proceed. Nor should this jurisdiction be held to attach, whatever court may have ruled that the petition was signed by a majority, when, in fact, it was signed only by a minority of the owners designated by the statute.

Jurisdiction exists in the superior court to grant letters of administration on the estate of a deceased person. When its power to grant such letters is invoked, the court must necessarily pass on the question of the death of the party whose estate is sought to be administered. The court by its grant of letters necessarily decides that such party has died. But should the party be, in fact, alive, its judgment is not conclusive that he is or was dead. It being made to appear to the court that the person alleged and held to be dead is in fact alive, the judgment of the court is void, and must be so held. Such is the decision of this court in *Stevenson* v. *Superior Court*, 62 Cal. 60. In deciding that case, it was said in the opinion of Ross, J.: "Adminstration may lawfully be had upon the estate of a dead man, but not upon that of one in life. Until death occurs there is no 'subject-

matter' over which it is possible for any court to exercise jurisdiction. It is true that the court of probate, before issuing letters of administration, must first determine affirmatively the question of death; but, notwithstanding such determination, the fact that the supposed intestate is alive may still be shown, and when shown, establishes the nullity of the entire proceedings."

In this, McKinstry, Sharpstein, Morrison, and McKee, JJ., concurred.

So in this case it should be held that jurisdiction of the subject-matter vested in the board of public works when the required petition was presented. If no such petition was presented, though the county court held that such a petition was presented, the jurisdiction did not attach.

The foregoing remarks show that the city is not estopped by action of the mayor or by judgment of the county court. This question is thoroughly discussed by Field and Sawyer, JJ., in *Liebman* v. *City and County of San Francisco*, 11 Saw. 147, where the same conclusion is reached. We refer particularly to the able opinion of the justices mentioned in the case cited.

The case of *Lent* v. *Tillson*, 72 Cal. 404, is in accord with these views. There the initial step to give jurisdiction was the adoption by the board of supervisors of a resolution authorizing the work to be done by expressing their judgment that such work would be expedient, and, in addition, the publication of the resolution as prescribed by the act of the legislature under which the proceeding was taken. This was done. The act was in this respect complied with. In the case before us the act was not complied with, for the required petition was not filed. In the case cited, as the act had been complied with, and jurisdiction attached for executing the work, we cannot see how the tax-payer was injured, conceding that the county court had jurisdiction to determine conclusively

the fact that the resolution required had been adopted
and published.

Conceding that the determination of the county court
in this case was *prima facie* evidence that a proper peti-
tion had been presented, still it was not conclusive.
The facts as to jurisdiction were open to the examination
of the bond-holder, and it was incumbent on him to in-
quire into them and ascertain whether the requirements
of the act had been followed.

We cannot regard the petitioner, who is a holder of
bonds issued under the act of 1872, as exempt from the
obligation to ascertain whether the bonds were issued in
compliance with the act of 1872. A purchaser of bonds
is bound by the law under which such bonds were issued,
and the law informs him that the bonds impose no ob-
ligation unless issued in accordance with law.

The application for the writ must be denied.

So ordered.

WORKS, J., SHARPSTEIN, J., McFARLAND, J., and
BEATTY, C. J., concurred.