THE BOARD OF COMMISSIONERS OF KNOX COUNTY *v.* JONES.

Nov. Term, 1855.

THE BOARD OF COMM'RS OF KNOX CO. *v.* JONES.

A person not legally authorized to furnish board to a poor person at the county's expense, can not charge the county for board so furnished, whether the person boarded was known to be a pauper or not.

The proper officers of the county are, by law, to determine who shall have relief as paupers, and how and by whom the relief shall be afforded, having regard to the requirements of the statute.

Section 2, of the act of 1852 "for the relief of the poor," (1 R. S. p. 401), confers upon each of the overseers the power, without the concurrence of the others, to discharge any of the duties which the statute requires them to perform.

The powers of overseers of the poor are limited to those conferred by statute.

Where a poor person is on the list of paupers and an inmate of the poor-house, and the superintendent is discharging his duty toward him, it is not competent for an overseer to provide the pauper board elsewhere, at the expense of the county.

APPEAL from the *Knox* Court of Common Pleas.

Monday, November 26.

PERKINS, J.—Suit by *Jones* against the board of commissioners of *Knox* county, to recover the sum of 16 dollars, alleged to be due for keeping one *O'Brien*, a pauper. On the trial of the cause upon appeal in the Court of Common Pleas, "it was proved," says the bill of exceptions, "that *O'Brien* was a pauper, who had been in the county poor-house of *Knox* county more than one year previous to the time of his death, and that he went, about the —— day of *January*, from the said poor-house to the house of the plaintiff, *Jones*, in *Vincennes;* that a short time after, he was taken sick, while at the house of the plaintiff, and remained there, so being sick, about five days, when notice was given by plaintiff to the witness, *Dork*, who was keeper of the poor-house, of the sickness of *O'Brien*, &c.; that on the third day after, the said keeper took *O'Brien* from the house of plaintiff to the poor-house, where, soon after, he died. It was further proved that *H. Decker* was one of the township trustees of *Vincennes* township, and as such made and delivered to the plaintiff a certificate as follows:

"*Vincennes*, 10th day of *March*, 1854. I hereby certify that I authorized *E. M. Jones* to keep *Thomas O'Brien* during his last illness. *H. Decker*, T. V. T.

Nov. Term,
1855.

THE BOARD
OF COMM'RS
OF KNOX CO.
v.
JONES.

"It was further proved that plaintiff presented his account and claim for an allowance for keeping said *O'Brien*, being the same claim filed as the cause of action in this suit, to the defendants for allowance, and that defendants refused to make such allowance, and afterwards did allow to the said keeper of the poor-house his bill for the board of said pauper up to the time of his death, and including the time he was at the house of the plaintiff. It was proved that 2 dollars per day was a reasonable price for keeping said *O'Brien* at plaintiff's house, and there was evidence as follows: that at the time of the contest before the commissioners about the plaintiff's claim, it was said in the presence and hearing of plaintiff, that plaintiff had sent to the poor-house for *O'Brien* to come and help kill his hogs, to which he replied, and denied that he had sent for *O'Brien*, and said that he did not want him to help kill his hogs, but wanted him to cut up and salt his pork. There was evidence that plaintiff had been the keeper of the poor-house preceding the present keeper, *Dork*, and as such had had charge of the paupers; and there was some proof that a boy, a witness for defendants, went to the poor-house and told *O'Brien* that *Jones* was about to kill his hogs; that the next afternoon *O'Brien* went to *Jones's;* but there was no proof that plaintiff either authorized or knew of the message. It was proved that *O'Brien* told the boy to let him know when *Jones* would kill his hogs, and this was all the evidence."

The Court, upon the trial, charged the jury, "that if they were satisfied by the evidence that the plaintiff knew the pauper to be a county charge, and permitted him to remain about his house, he had no right to charge the county with any expense following therefrom, unless he was directed to do so by the proper authority, to-wit, the trustees of the township, or any one of them;" to which the defendants excepted, &c.

Verdict and judgment for the plaintiff below.

We take it that no person can charge the county for the board of a poor person, whether known to be a pauper or

*not*, unless such person is legally authorized to furnish the board at the county's expense.

The proper officers of the county are, by law, to determine who shall have relief as paupers, and how and by whom the relief shall be afforded, having regard to statutory requirements. The question, then, in this case, is, was the plaintiff below authorized to board *O'Brien* at the expense of the county?

A certificate from one of the three overseers of the poor of the township, to the effect that he had so authorized the plaintiff, seems to have been admitted in evidence without objection. But it is insisted here that one of the three overseers could not confer such authority; that it could only be conferred by a majority, at a meeting of all of the overseers, according to the doctrine of the case of *Hamilton* v. *The State*, 3 Ind. Rep. 452.

This objection would be well taken, did not the statute confer the power of acting upon a less number than the three overseers. We think it does. Sect. 2, p. 401, declares that every board of township trustees, "and the members thereof," shall be overseers of the poor. We think this section makes each member an overseer, with power to act.

But the action of the overseer must be authorized by the statute. In this case, we think it was not. *O'Brien* was not a pauper entitled to temporary relief. He was, and had been, for more than a year, on the list of paupers, and an inmate of the county poor-house. He was there provided for by law. The keeper of the poor-house was bound to take care of and provide for him. No complaint was made that he did not in this case do, or stand ready to do, his duty. No emergency, as *Jones* well knew, was presented that authorized any person other than the keeper of the county poor-house to provide for *O'Brien* at the expense of the county. If *Jones* invited him away from the place provided for him, he should have returned him when he became weary of his company. If *O'Brien* voluntarily left the poor-house, and went unbidden to that of *Jones*, the latter should have refused to receive him, and the poor-house keeper should have immediately taken him

Nov. Term, 1855.

back. Such was his duty, and doubtless he would have discharged it. See the provisions generally of the poor law above referred to.

*Per Curiam.* — The judgment is reversed with costs. Cause remanded, with instructions to the Court of Common Pleas to dismiss the suit.

*S. Judah*, for the appellants.

*B. M. Thomas*, for the appellee.