# ZEIGLER *v.* HOPKINS.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CALIFORNIA.

Submitted March 1, 1886.—Decided April 12, 1886.

A statute of California authorized the opening of a street in San Francisco, to be known as Montgomery Avenue, the cost and expenses to be assessed on certain specified lots in proportion to the benefits accruing therefrom; and provided that when a majority in frontage of the owners of these benefited lots should petition certain officials for the opening, those officials should

organize into a board and proceed to open it and to apportion the cost in the manner pointed out by the statute. A petition being presented to the designated officials, they organized, and certified that the petition had been subscribed by the owners of the requisite amount of frontage, and proceeded to lay out the street and apportion the costs and expenses among those benefited in the manner provided by the statute. They reported their action to the county court as required by the statute, and the report was confirmed by the court. A tax was thereupon levied in the ordinary way in 1878–9 to meet the portion of the costs and expenses payable that year by the terms of the statute. H, an owner of a lot thus assessed and levied on, declining to pay, the land was seized and sold for the default to Z, who thereupon brought ejectment to recover possession. *Held :* That on the trial of this action H was not estopped by the acceptance of the petition by the officials and their certificate upon it, or by the judgment of the county court confirming their report, from showing that the petition for the opening was not signed by the owners of the requisite amount of frontage.

*Mulligan* v. *Smith*, 59 Cal. 206, approved and applied.

The court below having found that the property in dispute is worth $5000, this court, on motion to dismiss, disregards affidavits that it is worth less, although, taken by themselves, the affidavits show that it may be worth less than that sum.

Ejectment. Motion to dismiss. The case is stated in the opinion of the court.

*Mr. Samuel Shellabarger, Mr. Jeremiah M. Wilson, Mr Daniel Rogers, Mr. E. F. Preston* and *Mr. Philip G. Galpin,* for plaintiff in error.

*Mr. D. M. Delmas* and *Mr. A. H. Garland* for Rosenbaum.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This was an action of ejectment brought by Henry Zeigler for a lot in the city and county of San Francisco, and his right to recover depends on the validity of a sale of the property for nonpayment of a tax levied and assessed under an act to open and establish a public street in the city and county of San Francisco, to be called 'Montgomery Avenue,' and to take private lands therefor," approved April 1, 1872. Stat. Cal. 1871–2, 911. By that act a strip of land, particularly described, was taken for Montgomery Avenue, and the cost and expenses "incidental to the taking and opening of said avenue" were

to be assessed on certain " lots, pieces and subdivisions of land," particularly described, " in proportion to the benefits accruing therefrom to said several lots, subdivisions and pieces of land respectively, which said lands" were " declared to be benefited by the opening of said avenue. " By § 5, it was provided that " whenever the owners of a majority in frontage" of the property declared to be benefited, " as said owners are or shall be named on the last preceding annual assessment-roll for the state, city and county taxes," should " petition the mayor of said city and county in writing for the opening of Montgomery Avenue," a " board of public works," to be composed " of the mayor, the tax collector, and the city and county surveyor of the city and county of San Francisco," should " proceed to organize by the election of a president." This board was to ascertain and " set down in a written report . . . the description and actual cash value of the several lots and subdivisions of land included in the land taken for said Montgomery Avenue, and the amount of damage that will be occasioned to the property along the line and within the course of said avenue." The same board was also to ascertain and " set down in a written report a description of the several subdivisions and lots of land included" in those which by the law were to be assessed, and the amount which, in the judgment of the board, " the said lot or subdivision has been or will be benefited by reason of the taking and opening of said avenue relatively to the benefits therefrom accruing to the other lots or subdivisions respectively." This report when completed was to be kept at the office of the board for thirty days open for inspection by all parties interested, and notice thereof given by publication. Any person interested who felt himself aggrieved " by the action or determination of said board, as shown in said report," was permitted to apply to the county court of the city and county of San Francisco within a limited time for a review, and from the action of the county court on such a petition an appeal could be had to the Supreme Court. If no application for review was filed in the court within the time fixed, it was made the duty of the board to submit the report to the county court with a petition that it be approved and confirmed.

The court was authorized to make or cause to be made alterations or modifications, if in its opinion necessary, and, when completed to its satisfaction, " to approve and confirm said report." When the report was approved and the action thereon had become final, the board was required to prepare and issue coupon bonds, to be known and designated as " Montgomery Avenue bonds," payable in thirty years from their date, with interest at six per cent. per annum, to the amount necessary to pay and discharge the damages, costs, and expenses incident to the taking and opening of the avenue. These bonds could be taken by the parties interested in payment of the amounts due to them respectively, or the bonds could be sold by the board and the proceeds used for that purpose. By an express provision of the act, the city and county of San Francisco was not, in any event whatever, to be liable for the payment of these bonds, and any person purchasing them, or otherwise becoming the owner thereof, was to take them " upon that express stipulation and understanding." It was, however, provided that " there shall be levied, assessed and collected, annually, at the same time and in the same manner as other taxes are levied, assessed, and collected in said city and county, a tax upon the lands," which had been declared to be benefited by the opening of the avenue, " sufficient to pay the interest upon said bonds " as it matured, and also " a tax of one per cent. upon each hundred dollars' valuation, which shall constitute a sinking fund for the redemption of said bonds." The money arising from these taxes was to be paid to the treasurer of the city and county, and by him used for the purposes intended. These taxes were to be assessed upon the " values of the respective parcels of land as fixed in the said . . . report of said board."

The case was tried in the court below without a jury, and comes here on a finding of facts, which shows that a petition, regular in form, for the opening of the avenue, was presented to the mayor of the city and county in the month of April, 1872, but which was not in fact subscribed by the owners of a majority in frontage of the land declared to be benefited " as said owners " were " named in the last preceding annual as-

sessment-roll for the state, city, and county taxes," although it purported on its face to have been so signed. After the filing of this petition, the persons at that time filling the offices respectively of mayor of the city and county, tax collector, and surveyor, annexed thereto their several certificates that the petition had been subscribed by the owners of the requisite amount of frontage. This being done, the board of public works, consisting of the mayor, tax-collector, and surveyor, organized, opened the avenue, and assessed the benefits conferred on the property declared to be benefited, for the purposes of taxation. Their report, after being left at their office for thirty days, and the requisite notice thereof given, was filed with and confirmed by the county court. The lot now in question was among those declared by the law to be benefited, and was assessed by the board for the purposes of taxation. A tax levied for the year 1878–9 upon this assessed value, to meet the annual obligations under the law, was not paid by the owner, and for this default the sale was made under which Zeigler now claims title. Upon these facts the court below gave judgment against him, and to reverse that judgment this writ of error was brought.

There is in reality but a single question presented for our consideration in this case, and that is whether, in an action of ejectment brought to recover the possession of lands sold for the nonpayment of taxes levied to defray the expenses of opening Montgomery Avenue generally, and not in obedience to an order of a court of competent jurisdiction to meet some particular liability which had been judicially established, the landowner is estopped from showing, by way of defence, that the petition for the opening presented to the mayor was not signed by the owners of the requisite amount of frontage; and this depends on whether the owner is concluded, (1), by the acceptance of the petition by the mayor and his certificate as to its sufficiency and the action of the board of public works thereunder; or, (2), by the judgment of the county court confirming the report of the board of public works.

This precise question was most elaborately considered by the Supreme Court of California in *Mulligan* v. *Smith*, 59 Cal. 206,

and decided in the negative, after full argument. With this conclusion we are entirely satisfied. It is supported by both reason and authority. The opinions of Justices M'Kee, Sharpstein, and Ross, which are found in the report of the case, leave nothing further to be said on the subject. "A petition from the owners of a majority in frontage of the property to be charged with the cost of the improvement was necessary to set the machinery of the statute in motion," and "no step could be taken under the provisions of the statute until the requisite petition had been presented." Neither the mayor nor the county court was "authorized to enter into any investigation of the frontage as represented by the petition, or to adjudicate its sufficiency, or to make any record in reference to it." "The only powers which the county court, as a court of limited jurisdiction, was authorized to exercise," were such as related to the matters contained in the report of the board of public works, and this did not include the petition.

The case has been argued here as though it was between the taxpayers and *bona fide* holders of negotiable securities issued by them or for their account; but nothing of that kind is presented by the record. It does not appear affirmatively that a bond was ever issued. But if we are to presume from the finding that after the presentation of the petition the "mayor, tax collector, and surveyor proceeded to perform the duties imposed upon the board of public works," bonds of some kind were put out, it does not appear either that they were in such a form as to make them valid in the hands of *bona fide* holders if they were in fact issued without authority, or that there are any such holders. No other questions are now to be considered than such as would arise if it appeared affirmatively on the face of the record that the tax was levied simply to raise the means to pay the members of the board their own salaries as specially provided for in the act. All we are now called on to decide is whether the presentation to the mayor of a petition, signed by the owners of less than a majority in frontage of the property to be assessed, as they were named in the last preceding annual assessment-roll, was sufficient to authorize the levy of the tax for which the lots in controversy were sold, and we have no

hesitation in saying it was not. . It will be time enough to consider the rights of *bona fide* holders of "Montgomery Avenue bonds," if there be any, when a case arises which involves such questions.

It.remains only to dispose of a motion which has been made by or on behalf of Albert S. Rosenbaum, who claims to be a holder of Montgomery Avenue bonds, to dismiss the case; (1), because the value of the matter in dispute does not exceed $5000; and (2), because the suit is colorable only, and got up by collusion so as to preclude a decision favorable to the holders of Montgomery Avenue bonds. Without deciding how·far it is allowable for persons not parties to a suit to intervene with a motion of this kind, it is sufficient to say that we see no evidence of any improper collusion in this case. We are entirely satisfied that the suit was instituted in good faith, by real parties, for the determination of a substantial right, and that it fairly presents the questions involved. The court below found as a fact that the value of the premises in dispute exceeds $6000, and this appears on the face of the record. While the affidavits as to value presented by Rosenbaum, taken by themselves, show that possibly the property may be worth less than $5000, they are not enough to overcome the finding of the court below that it was actually worth more than that sum.

*Affirmed.*