[No. 12685.    In Bank. — December 12, 1890.]

## N. W. SPAULDING, RESPONDENT, *v.* NORTH SAN FRANCISCO HOMESTEAD AND RAILROAD ASSOCIATION, APPELLANT.

JURISDICTION — ADJUDICATION OF JURISDICTIONAL FACT — JUDICIAL ACTION OF SUPERVISORS — PETITION FOR GRADING OF STREET — MAJORITY OF FRONTAGE. — The rule that whenever the jurisdiction of a court not of record depends on a fact which the court is required to ascertain and settle by its decision, such decision, if the court has jurisdiction of the parties, is conclusive, and not subject to any collateral attack, applies to the judicial action of a board of supervisors upon a petition for the grading of a street in deciding that a majority of the frontage of lots on the street where the work was proposed to be done was represented in the petition for the work.

ID. — ACTION FOR STREET ASSESSMENT IN SAN FRANCISCO — EVIDENCE. — In an action to recover an assessment for the grading of a street under the act of April 1, 1872, relating to street-work in San Francisco, which provides that no grading can be ordered by the supervisors unless a majority of the frontage of the lots shall be represented in the petition requesting the work, where the petition under which the grading was done did not show whether the petitioner owned a majority of the whole frontage or not, evidence that the petitioner was not the owner of more than one half of such frontage is inadmissible.

ID. — FAILURE TO REMONSTRATE — WAIVER OF OBJECTION TO GRADING — COLLATERAL ATTACK UPON DECISION OF SUPERVISORS. — An owner of land on such street who fails to file the remonstrance required by the act waives all objections to the form and granting of the petition, and the decision of the board in ordering the grading to be done is conclusive as against a collateral attack in an action to recover the assessment.

Id. — Grading of Several Blocks — Previous Grading of Cross-streets. — The fact that the portion of the street sought to be improved had been divided into two separate parts by a cross-street, which had been previously graded, does not invalidate the assessment, as the whole of the street might have been graded, and the blocks divided by cross-streets included in one petition and assessment.

Id. — Letting Second Contract for Increased Price — Presumption of Regularity. — Where the contract to grade the street was entered into for a certain sum per cubic yard, and afterwards, without any request of the contractor, another resolution of intention was published, resulting in a second contract with the same contractor, for a larger sum per cubic yard, and no reason appears for letting the second contract, it will be presumed that the board acted regularly in effecting the second contract, and that a valid and sufficient reason existed for its action, and an assessment against the owners is not thereby invalidated.

Id. — Remedy for Objection to Second Contract — Appeal to Supervisors. — The remedy for any objection by a land-owner to the letting of a second contract for the grading of a street for an increased price, while a previous contract was in force, is by an appeal to the board of supervisors, under section 12 of the act of April 1, 1872, and not by defense to an action to recover the assessment under the second contract.

Appeal from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinions.

*E. J. Pringle,* and *D. H. Whittemore,* for Appellant.

*W. H. H. Hart,* and *J. M. Wood,* for Respondent.

McFarland, J. — This is an appeal by defendant from a judgment enforcing a street assessment against a lot on Lombard Street.

The case was heard in Department, and the judgment was affirmed, and the facts of the case are stated in the opinion then rendered by Commissioner Gibson (filed July 8, 1890.) A hearing in Bank was ordered, because it was strenuously urged that the decision was in conflict with *Mulligan* v. *Smith,* 59 Cal. 206, and *Kahn* v. *Supervisors,* 79 Cal. 388. But, after argument on rehearing, and mature consideration, we are satisfied with the conclusions reached in Department.

*Mulligan* v. *Smith* and *Kahn* v. *Supervisors* arose upon a special statute which did not provide for an adjudication of the jurisdictional fact that a majority of the frontage of lots fronting on the work proposed to be done was represented by the owners thereof in a petition for the work, and did not provide for a hearing to any of the owners of such frontage on that issue. But we think that section 4 of the act in question, in the case at bar (Stats. 1871–72, p. 805), does provide for such adjudication by and such hearing before the board of supervisors, and that the decision of the board that a majority of such frontage was represented in the petition was a decision which the act says "shall be final and conclusive." In Freeman on Judgments, section 523, it is stated as a rule (founded on numerous authorities there cited), that "whenever the jurisdiction of a court not of record depends *on a fact* which the court is required to ascertain and settle by its decision, such decision, if the court has jurisdiction of the parties, is conclusive, and not subject to any collateral attack." The rule embraces " a large number of persons and tribunals not ordinarily spoken of as ' judges' nor as ' courts' "; for " their authority in this respect is judicial" (Freeman on Judgments, sec. 539); and it was expressly applied by this court to boards of supervisors in *People* v. *Hagar*, 52 Cal. 182. The rule stated in the latter case governs, we think, the case at bar. In *Turrill* v. *Grattan*, 52 Cal. 97, the only question which seems to have been raised was as to the sufficiency of the petition itself, which was a question, not of fact, but of law. In the case at bar, we think that the petition was sufficient. A diagram, which was not as full in details as it might have been, was presented with the petition; but it was not inconsistent with the main body of the petition, which sufficiently stated the facts required by the statute. The point that the contract was invalid because there had been a previous contract is sufficiently answered in the said opinion of

the commissioner; and we may add that the remedy for any such objection to the contract is provided for in section 12 of the act.

(It may be remarked, also, that it is doubtful whether the points which appellant seeks to make against the petition and to the rulings of the court are properly presented in the record.)

The judgment and order denying a new trial are affirmed.

Paterson, J., Fox, J., Sharpstein, J., and Thornton, J., concurred.

The following is the opinion above referred to, which was rendered in Department Two July 8, 1890:—

Gibson, C.— Defendant appeals from a judgment rendered in an action brought by plaintiff as the assignee of one J. S. Dyer, a street contractor, to recover an assessment for $323.91 for grading Lombard Street from Broderick Street to the west line of Lyon Street, in San Francisco, which had been levied upon a lot designated as No. 10 on the diagram attached to and made part of the assessment, and also from an order denying a new trial.

By section 4 of the act of April 1, 1872 (Stats. 1871–72, p. 804), pursuant to which the street was graded, it is provided that no work of the character mentioned can be ordered by the board of supervisors, "unless the majority of the frontage of the lots and land fronting on the work proposed to be done and described in said resolution, or which is to be made liable for such grading, except public property, shall have been represented by the owners thereof, or by their agents, in a petition to the said board of supervisors, stating that they are the owners and in possession, or agents, of the lots named in the petition, and also requesting that such improvement or street-work shall be done."

At the trial, after plaintiff had rested his case, defendant introduced the petition of F. Weisenborn, upon which the board of supervisors had ordered the grading, and upon which the contract therefor had been made with plaintiff's assignor, and then called the petitioner as a witness, and offered to prove by him that he was not the owner nor in the possession of more than one half of the land fronting on Lombard Street at the time he signed the petition and presented it to the board of supervisors. This offer the court ruled out, and the appellant claims that the court committed error in so doing.

The petition, on its face, shows that the petitioner is the owner of the entire frontage on each side of Lombard Street between Baker and Lyon streets, and 137½ feet on the latter street south from its junction with Lombard Street, and the same distance north on the same street from the junction of the last-mentioned streets; that there are six 50-vara lots fronting on Lombard street between Baker and Broderick streets, and that the crossing formed by Baker and Lombard streets had been graded. The frontage of petitioner on Lombard Street is not shown in feet, nor is it shown that one of the 50-vara lots is public property (a school lot), that should for that reason be excluded from the computation of frontage.

Now, while the failure to show these two facts makes the petition uncertain, on its face, as to whether the petitioner is the owner of a majority of the frontage to be affected or not, it does not make it appear that the petitioner is not the owner of more than one half of the frontage to be affected by the proposed improvement; for if it did, the petition would be fatally defective. The statement that he is the owner of two lots, being the entire frontage on both sides of one of the two blocks he seeks to have graded, and 137½ feet north and the same distance south on Lyon Street, from its junction with

Lombard Street, is not inconsistent with the fact that he is the owner of a majority of the whole frontage, but, on the contrary, is consistent with it. Hence the petition was sufficient for the board of supervisors to act upon, and ascertain whether it should be granted or not.

In exercising the jurisdiction thus obtained, and in granting the petition, the board of supervisors must necessarily have found that the petitioner was the owner of a majority of the frontage to be affected by the proposed improvement. Even if, as seemingly suggested by counsel for appellant, the act referred to does not provide, in express terms, for any determination of the matter of a petition, clearly, where a board is empowered to receive a petition, and is invested with discretion in regard to the subject-matter, it has the implied power to determine whether it shall be granted or not.

The law makes it the duty of the board, upon receiving a proper petition for the grading of a street, to publish a resolution of its intention to perform the work, and thereafter make an order that it shall be done. Can it be reasonably contended that if a petition sufficient upon its face should pray for the grading of a street already graded, the board would have to perform the idle ceremony of publishing a resolution of intention to perform the work, and order the same to be done, regardless of the falsity of the apparent necessity of the grading shown by the petition? Assuredly not. To determine the necessity for the work requires the exercise of judgment on the part of the board, and in order to properly reach the consideration of this fact, it would first have to determine whether the petition were sufficient or not.

The amount of frontage owned or possessed by the petitioner being, then, one of the jurisdictional facts that the board had to pass upon, its determination of the same in favor of the petitioner is and was conclusive against the collateral attack of appellant at the trial. (*People* v. *Hagar,* 52 Cal. 171.)   And by the terms of the

act itself it was intended to be conclusive, unless objected to in the manner provided for in section 4 of the act, which is as follows: —

" All owners of lands or lots, or portions of lots, who may feel aggrieved, or have objection to the ordering of the work described in said notice, . . . . shall file with the clerk of the board of supervisors a petition or remonstrance, wherein they shall set forth in what respect they feel aggrieved; . . . . which petition or remonstrance shall be passed upon by said board of supervisors, and their decision thereon shall be final and conclusive."

This provision is intended to enable parties in interest to reach any irregularity or defect in the petition itself, or matter connected with the granting of it, and to be their only remedy. There is no evidence here that appellant ever availed itself of the opportunity thus given to be heard. It therefore waived all objections to the form of and the granting of the petition.

In *Jennings* v. *Le Breton,* 80 Cal. 9, in applying a similar provision in section 12 of the same act, providing for an appeal to the board of supervisors respecting the acts of the superintendent of streets, it was held that an appeal to the board was the only remedy for any grievance caused by the official acts of the superintendent of streets, and that a failure to appeal was a waiver of all objections thereto. (See cases there cited.)

The statute under consideration provides for the publication of a notice of intention, in the form of a resolution, to make the proposed improvement, after receiving a sufficient petition therefor, and for a hearing upon the same at the instance of any person in interest who may feel himself aggrieved. This, we are convinced, presents a different case from that of *Mulligan* v. *Smith,* 59 Cal. 206; affirmed in *Kahn* v. *Board,* 79 Cal. 388. There it was held that the petition presented to the mayor of San Francisco for the opening of Montgomery

Avenue, in said city, under the special act of April 1, 1872 (Stats. 1871–72, p. 911), was invalid, and the mayor had no authority, under the act, to pass upon it; and that the approval by the county court of the report of the board of public works, based upon the petition, was of no effect, because the petition was insufficient, and the act did not provide for notice of a hearing to the parties in interest, in relation to it, at the time the report was to be considered, nor at any prior or other time.

The appellant also urges that as that portion of Lombard Street sought to be improved was divided into two separate portions by the crossing of Baker Street, which had previously been graded, the board of supervisors could not, under section 3 of the statute, order two separate and distinct portions of a street thus divided to be done as one piece of work.   By that section, the board of supervisors are authorized to order the whole or any portion of a street graded.   It is obvious that two blocks on a street may embrace the whole or only a portion of it; and we do not think that because the Baker Street crossing had been previously graded, which it is conceded could be done separately, the two blocks divided by such work could not be included in one petition, resolution of intention, order, contract, and assessment.

Dyer, the assignor of plaintiff, entered into his first contract, based upon regular proceedings, to do the grading for fifty cents per cubic yard, but before the expiration of the time within which he was required to commence the work under this contract, pursuant to section 6, and within two days after the contract had been entered into, and without any request on the part of Dyer to be relieved from the contract, the board of supervisors passed and published another resolution of intention, which resulted in a second contract with the same Dyer, to perform the work at sixty cents per cubic yard, under which contract he performed the work.

On these facts the appellant bases his remaining ob-

jection, viz., that while the first contract remained in force, the board of supervisors had no power to let the second contract. Consequently, no recovery can be had for work performed under it. The reason why the board of supervisors saw fit to consider the first contract of no effect, and to let the second one, does not appear. It was treated by both the board of supervisors and Dyer as having been extinguished. Nothing was done under it. The contents of the first contract are not before us, and although assuming the proceedings which led up to it to have been regular, still, for some substantial defect or other in the contract itself, the board of supervisors may properly have deemed it necessary to renew the proceedings, and obtain bids over again, which resulted in another contract with the same person, who was a competitive bidder for the work. This being probable, we must presume that the board acted regularly in effecting the second contract, and that a valid and sufficient reason existed for such action. (Code Civ. Proc., sec. 1963, subd. 15.)

For these reasons, we think the judgment and order should be affirmed.

FOOTE, C., and VANCLIEF, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.