[No. 19480.   In Bank.—March 17, 1896.]

L. N. BIGELOW, RESPONDENT, v. BARTOLO BALLERINO, APPELLANT.

CHANGE OF PUBLIC STREET — CLOSING OF FORMER STREET — RIGHTS OF OPPOSITE LOTOWNERS—COMPENSATION FOR EASEMENT.—Where a former street, running north and south, has been closed by order of the board of supervisors, and a new street running in the same direction has been opened to the west of it, so as to leave a wedge-shaped piece of private land between the old and new streets, the owner of a lot which fronted on the west side of the old street has absolute title to the wedge-shaped piece of land between the streets as against a lotowner on the east side thereof, and, as the owner of the western half of the old street, is entitled to prevent the owner of the lot on the east side thereof from encroaching or building upon the western half thereof; but the owner of the latter lot has an easement in the whole of the old street, of which he cannot be deprived without just compensation; and the owner of the west half of that street cannot build thereon, or exercise any dominion over it, in derogation of such easement.

ID.—TAKING POSSESSION TO LINE OF NEW STREET—MISTAKE —WAIVER— ESTOPPEL—KNOWLEDGE OF RIGHTS.—The fact that the owner of the lot on the east side of the former street, under a mistaken belief of right, took possession of all the land between his premises and the east line of the new street, does not waive his claim to just compensation before he can be deprived of his easement in the former street, nor estop him by conduct, acquiescence, or election from contesting the closing of the former street.

ID.—CLOSING OF STREET—RIGHTS OF ABUTTING OWNER.—Although the supervisors have authority to close a public street, yet an owner of a lot which abuts upon the street has an easement therein, whether he has a fee in the street or not, which easement is distinct from the public right of way, and is his property, of which he cannot be deprived without

just compensation; and he may insist that the closing of the street is void as to him until prepayment to him, or into court, of such sum as would compensate him for his property taken or damaged thereby.

ID.—CLOSING OF STREET.—The vacation and closing of a public street by the proper authorities, when legally effected, means more than a mere constructive closing which must leave the street still a street but no longer subject to municipal control. It involves a physical closing by the owners of abutting lands as well.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. W. H. CLARK, Judge.

The facts are stated in the opinion of the court.

*Horace Bell,* for Appellant.

*A. W. Hutton,* for Respondent.

HENSHAW, J.—Appeals from the judgment and from the order denying a new trial.

Negro alley was, and for many years had been, a public street and highway of the city of Los Angeles. It extended northerly and southerly, and plaintiff and defendant owned opposite frontages upon it. Plaintiff's land was on the west, while defendant's property was on the east side of the alley.

The municipal authorities vacated and abandoned Negro alley, and established a new street to the west thereof called Los Angeles street. The east line of Los Angeles street and the west line of Negro alley, while in close proximity, did not coincide. There was left a narrow wedge-shaped strip of land held in private ownership between the lines of the two streets.

After the vacation of the old and the establishment of the new street, the defendant asserted the right to a frontage upon Los Angeles street corresponding to that which he had enjoyed upon Negro alley. This claim, while not sound in law, drew some support from the language of the revised charter of Los Angeles (approved April 1, 1876). Acting upon this claim, he encroached upon, took and held possession of, so much of Negro

alley and the wedge-shaped strip as lay between the lines of his property extended and the east line of Los Angeles street.

Plaintiff then commenced this action to quiet her title to the wedge-shaped strip and to the western half of Negro alley, conceding to defendant the ownership of the eastern half thereof.

The answer interposed several defenses, one of which was that even though Negro alley had been abandoned by the authorities as a public street, and though the fee to the westerly one-half of it might be in plaintiff, yet defendant still retained the easement of a right of way over all of the land formerly within the alley for the necessary and convenient use of his property. Here it should be said that this property, with a frontage of one hundred and seven feet, was covered by a brick building two stories in height, the lower story being fitted and used for stores.

The court found that Negro alley had been for many years a public street of the city; found that it had been legally abandoned and vacated as a public street, and found and decreed ownership in plaintiff of the disputed strip and portion of the alley. It found that defendant had taken possession of all the lands between his property and the line of Los Angeles street, but that his claim thereto was unfounded excepting as to the easterly half of Negro alley. It made no specific findings upon defendant's claim of easement, but decreed that by taking possession of this land defendant waived all right to other compensation for any damage which he may have sustained by reason of the closing and vacating of the alley, and is estopped from contesting the validity of such closing and vacation.

The findings and decree of plaintiff's ownership in fee of the disputed strip and of the western half of Negro alley are sufficiently supported by the evidence, no question of the city's ownership or title being here under consideration. She was, therefore, entitled to resist

any unwarranted encroachments of defendant (as by building) upon this land.

The conclusion of law that defendant is estopped from contesting the validity of the closing of Negro alley and has waived all claim to damages by reason of the fact that he took possession of the land fronting his premises is not sound.

The principle by which defendant's conduct is to be judged is, as respondent's counsel correctly state, the principle of election. It does not appear that he petitioned for or consented to the closing of the alley, but it is said that because upon the day after the closing he moved upon and took possession of the vacated land fronting his property he thereby made his election to take that land in lieu of damages or other compensation, and thus of necessity acquiesced in the proceedings leading to the vacation, and will not be permitted thereafter to assert any other claim or right. But in all this an essential element of a binding election is lost sight of, and that is the full knowledge by the elector of his rights. Election is based upon the well-settled rules of estoppel. Where one to whom two or more courses are open, with full knowledge of his rights and liabilities, follows one in preference to another, thereafter he will not be permitted to retrace his steps and pursue another course, to the injury of any person who, with the right to do so, has relied upon the election first made. (*Burroughs* v. *De Couts,* 70 Cal. 371; *Estate of Smith,* 108 Cal. 115.)

But Ballerino's acts in taking possession of the land were manifestly prompted by a mistaken belief that he had title to it, and indeed this does not seem to be questioned. He was not then acting with knowledge of his rights, and to say to him that, because he had under honest error claimed more than he was entitled to, he should take less and yet still be bound by his election, would be to subvert entirely the meaning of the principle. The court did not decree him what he elected to take, he did not elect to take what the court decreed he

should have, and by no application of the doctrines of election or estoppel is he forbidden present freedom of action by reason of his past conduct. Of course, if Ballerino had taken under a well-founded claim, and had thereafter, for example, brought an action for damages, the reason for and the justness of the application of the principle would both be apparent.

Ballerino cannot, therefore, be held to be estopped by conduct, acquiescence, or election, and the court's conclusion of law in this regard cannot stand.

In their *form* the proceedings of the municipal authorities looking to and concluding in the passage of the ordinance vacating Negro alley were due and regular. But back of this lies the vital consideration: What effect do the proceedings have upon the rights of a nonconsenting owner of abutting property?

Section 14, article 1, of the constitution declares that private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for, the owner. The owner of property abutting upon a public street has an easement in the street, distinct from the public's right of way, which easement is his property. In *Eachus* v. *Los Angeles Ry. Co.*, 103 Cal. 614, 42 Am. St. Rep. 149, this court in bank, speaking through Mr. Justice Harrison, said:

" The right of the owner of a city lot to the use of the street adjacent thereto is property which cannot be taken from him for public use without compensation; and any act by which this right is impaired is to that extent a damage to his property. When a city subdivides a tract of land of which it is the owner into blocks and streets, and sells the same, it thereby dedicates the streets to public use, and the purchaser of one of those lots acquires an easement in the street fronting upon his lot, for the purpose of ingress and egress, which attaches to the lot, and in which he has a right of property as fully as in the lot itself; and any subsequent act of the municipality by which that easement is destroyed or substantially impaired for the benefit of the public is

a damage to the lot itself, within the meaning of the constitutional provision, for which he is entitled to compensation. Such easement is a right of property incident to the lot itself, and any damage sustained by the owner in its destruction or impairment is a damage peculiar to himself and independent of any damage sustained by the public generally. For the purpose of determining this damage, it is immaterial whether he has the fee in the street or only an easement for its use. In either case it is property, for an injury to which he is entitled to relief." (Citing *Denver* v. *Bayer*, 7 Col. 113; *Rude* v. *St. Louis*, 93 Mo. 413; *Hobson* v. *Philadelphia*, 150 Pa. St. 595; *Schaufele* v. *Doyle*, 86 Cal. 107.)

If needed, authorities might be indefinitely multiplied in support of this proposition. The following are but a few of many: *Haynes* v. *Thomas*, 7 Ind. 38; *Petition of Concord*, 50 N. H. 530; *Lindsay* v. *Omaha*, 30 Neb. 512; 27 Am. St. Rep. 415; *Pearsall* v. *Eaton County*, 74 Mich. 558; *Gargan* v. *Louisville etc. Ry. Co.*, 89 Ky. 212; *Heinrich* v. *St. Louis*, 125 Mo. 424; *Anderson* v. *Turbeville*, 6 Cold. 150; *Story* v. *New York etc. R. R.*, 90 N. Y. 122; 43 Am. Rep. 146; *Cincinnati* v. *White*, 6 Pet. 431; Lewis on Eminent Domain, sec. 114; *Parker* v. *Bishop of Chicago*, 146 Ill. 158; Elliott on Roads and Streets, 662; 1 Hare on Constitutional Law, 377, 382; Tiedeman on Municipal Corporations, sec. 311.

The constitutional rights of an owner of private property which is sought to be taken or damaged for public use are two: 1. The right to compensation; and 2. The right to have that compensation made or paid into court before his property is taken or injuriously affected. Either or both of these rights he may waive; that is to say, he may waive his right to any compensation, or he may waive his right to prepayment of compensation. But where there is no such waiver, the property owner may rest secure in the protection which the constitution affords him that his property shall not be taken or damaged without compensation first made. It is not incumbent upon him to demand that the authorities shall

respect his rights; the duty is theirs to work no unlawful invasion of them.

The vacation of a highway, when duly and legally effected, involves something more than a mere constructive closing which would leave the street still a street, but no longer subject to municipal control. It involves a physical closing as well, which entitles the owners of the soil once occupied by the highway to take full and complete possession of their land. (*Brook* v. *Horton*, 68 Cal. 554; *San Francisco* v. *Burr*, 108 Cal. 460; *Commonwealth* v. *Westborough*, 3 Mass. 406; *Hobart* v. *County of Plymouth*, 100 Mass. 159; *Jackson* v. *Hathaway*, 15 Johns. 447; 8 Am. Dec. 263; *Barclay* v. *Howell*, 6 Pet. 498; *Nicholson* v. *Stockett*, 1 Walk. (Miss.) 67; Elliott on Roads and Streets, 661; Thompson on Highways, 188; Angell on Highways, sec. 326.)

It is such a closing as this which the court found to exist when it quieted plaintiff's title to that portion of the land in controversy, formerly Negro alley. It was right in so doing under its further findings and conclusions of law that defendant was estopped from contesting the validity of the closing or of claiming damages therefor. But these conclusions, as has been said, are not supported. It follows that Ballerino has waived none of his rights, and may insist that as against him the vacation or closing is without validity or effect until prepayment to him, or into court, of such sum as would compensate him for his property taken and damaged thereby.

It does not result from this that the proceedings of the municipal authorities looking to the closing of the alley are void. It would matter little whether the authorities first compensated the property owners and then declared the alley closed, or first declared it closed and then made compensation, provided it be distinctly understood that in the latter case, which is the case at bar, no rights attach or are lost, no invasion of the property rights of a nonconsenting owner may be worked, and no substantial impairment of his easement

result until compensation has been made to him in the constitutional mode. In other words, the sequence of the acts becomes immaterial, saving that in the present instance, as against nonconsenting property owners, the ordinance of vacation is without force or validity to work the taking or damaging of their property until compensation has been made to them. (*Chambers* v. *Cincinnati etc. R. R.*, 69 Ga. 320; *Langford* v. *Commissioners of Ramsey County*, 16 Minn. 375; *Brown* v. *Seattle*, 5 Wash. 35.) Until that time, as to them, the street still remains a public street to the full extent necessary to protect them in their constitutional rights.

Ballerino then, so far as the evidence in this record shows, is entitled to all of the rights he formerly enjoyed in Negro alley, among which is included his easement in the piece of land which is a part of Negro alley, and which is here claimed by plaintiff. Though the fee of that piece is decreed by the court to be in plaintiff, she is not entitled to exercise any acts of dominion over it in derogation of Ballerino's rights. Her title to the wedge-shaped strip lying without the alley and her right of possession and dominion over it is absolute against Ballerino.

The judgment and order are reversed and the cause remanded for a new trial.

BEATTY, C. J., HARRISON, J., GAROUTTE, J., VAN FLEET, J., and TEMPLE, J., concurred.

McFARLAND, J., dissented.