[L. A. No. 2656.    Department One.—June 28, 1911.]

## H. W. WILCOX, Appellant, v. JOHN ENGEBRETSEN et al., Respondents.

STREETS—CHANGE OF GRADE—TIME FOR FILING OBJECTIONS—LAST DAY FALLING ON SUNDAY.—TIME EXTENDED TO MONDAY.—Where the last day of the thirty-day period allowed by section 38 of the act of March 9, 1893, (Stats. 1893, p. 89), in which to file objections to a proposed change of grade of a public street in a municipality, falls on a Sunday, the time to file such objections is extended to and including the following Monday.

ID.—PETITION BY PROPERTY-OWNERS—CONDITION PRECEDENT TO ACTION BY CITY COUNCIL.—Where a statute requires the filing of a petition by the owners of a majority of the property affected by a change of grade of a city street, as a condition precedent to the making of

an order therefor, the city board of trustees or council has no power to make the order until a sufficient petition has been filed.

ID.—NECESSITY OF PETITION — SUFFICIENCY OF PETITION — STATUTORY PROVISIONS AFFECTING.—As the necessity for such petition is the creature of statute, and is not required by any constitutional guaranty, the statute may dispense with such requirement, or it may provide that the decision of the board or council as to its sufficiency, or any subsequent act depending upon it, such as the issuance of bonds, shall be conclusive evidence of the fact that a sufficient petition has been filed.

ID.—PROCEEDINGS AFFECTING PRIVATE PROPERTY—EXERCISE OF DELEGATED LEGISLATIVE AUTHORITY—COLLATERAL ATTACK ON PETITION.— A distinction is to be made between the proceedings of a board or council acting in pursuance of some delegated legislative authority in creating or extending a political subdivision of the state, as a county or a city, a proceeding which does not directly affect private property, and proceedings to open, grade, regrade, or improve a street, which do directly change or affect private property. In the former class of cases, the fact that such body acts upon a petition which does not appear bad upon its face, and proceeds thereon according to law, is usually held to be conclusive of the sufficiency of the petition against any collateral attack. In the latter class of cases, the rule does not apply.

ID.—ABUTTING OWNER MAY COLLATERALLY ATTACK PETITION — SIGNATURES BY LESS THAN A MAJORITY OF OWNERS OF PROPERTY.— There is nothing in the act of 1891 (Stats. 1891, p. 116), as amended by the act of March 9, 1893, that could be applied to a change of street grade and which would operate to make the order changing such grade conclusive of the sufficiency of the petition therefor, and consequently, an abutting property-owner, in an action by him to enjoin the carrying into effect of such order, may attack the sufficiency of the petition, and show that it was not signed by owners of a majority of the property affected by the proposed change of grade.

ID.—DAMAGES SUSTAINED BY CHANGE OF GRADE—RIGHT TO HAVE DAMAGES FIXED BY JURY—CONSTITUTIONAL LAW.—The statute recognizes the right of the abutting property-owner, under section 14 of article I of the constitution, to refuse the award made by the city council for the damages sustained by him by reason of the change of grade, and to insist upon submitting the question of his damage to a jury, and expressly provides that he may do so. He cannot be deprived of this constitutional guaranty by the decision of the council that he is not damaged.

ID.—CONDEMNATION SUIT WHERE NO DAMAGES ARE AWARDED BY COUNCIL. —The fact that the statute makes no provision for a condemnation suit, except where damages are awarded to the owner and he is unwilling to accept the amount allowed, does not deprive him of the right to a jury trial in cases where no damages have been awarded

CLX Cal.—19

him in the proceedings. Under the constitution, the ascertainment and payment of such damages in the mode there prescribed, is a condition precedent to the right of the city to do the public work which will cause the damage.

ID.—INJUNCTION BY PROPERTY-OWNER PRIOR TO ASCERTAINMENT OF DAMAGES.—The property-owner has the right to enjoin such work until his damages have been lawfully ascertained and paid in the manner prescribed by the constitution.

ID.—PLEADING—ALLEGATION OF DAMAGE.—The complaint in such an action sufficiently alleges that the plaintiff's property would be damaged by the proposed change of grade, although the amount thereof in money is not stated, where it appears therefrom that the elevation of the street with respect to his property will be seven feet lower at one end and five feet higher at the other end than it would be if the street conformed to the previously established grade, and that in consequence thereof his ingress and egress to and from the lot will be impeded.

APPEAL from a judgment of the Superior Court of San Diego County. W. R. Guy, Judge.

The facts are stated in the opinion of the court.

Ward, Wells & Ward, for Appellant.

Haines & Haines, and W. R. Andrews, City Attorney of San Diego, for Respondents.

SHAW, J.—This is an action by an abutting property-owner to enjoin the city council of San Diego and Engebretsen, as contractor under a street-grading contract, from proceeding to reduce the street surface in front of the plaintiff's property to the established grade. It is alleged that if the level of said street is made to conform to the established grade, as proposed, the plaintiff's property, at the east end, will be fifteen feet above the level of the street and that, at the west end, the street will be eleven feet higher than the surface of his property, and that the consequence of the doing of the work will be to interfere with and impede plaintiff's ingress and egress from the property and thereby cause great injury and damage thereto. The official grade to which the street is to be made to conform is not the grade originally established, but is a grade claimed to have been established by an ordinance of the council purporting to change the previously established grade. The effect of the change proposed is to reduce the

official grade of the street level seven feet at the east end, and to raise it five feet at the west end. The allegation is to the effect that this proposed change of grade will cause the damage alleged. The suit for an injunction is based in part on the alleged invalidity of the ordinance making this proposed change of grade. Judgment was given in the court below for the defendants, after sustaining a general demurrer to the complaint. The plaintiff appeals.

The proceedings to change the grade appear to be invalid. The allegations of the complaint are admitted by the demurrer to be true. The proceedings were taken under the act of March 9, 1893 (Stats. 1893, p. 89; Deering's General Laws of 1909, p. 1307). Section 38 of this act provides that the city council shall have power to change or modify the grade of any public street, and that, before ordering such change, it shall pass an ordinance or resolution of intention to do so and shall publish the same in a newspaper for ten days and post notices thereof for five days. It then proceeds as follows: "If no objection to the said proposed change . . . shall be filed with the clerk of the council within thirty days from the first publication of the ordinance or resolution of intention hereinbefore mentioned, the city council shall have power to declare such grades to be changed and established in conformity to said ordinance or resolution; *provided*, that no change of an established grade shall be ordered except on petition of the owners of a majority of the property affected by the proposed change of grade."

The resolution of intention was passed on January 20, 1908, and the first publication thereof was on January 24, 1908. The thirty days allowed for filing objections would have expired on February 23, 1908, but for the fact that that day fell on a Sunday. The time was thereby extended to February 24th. (Pol. Code, sec. 13; Civ. Code, sec. 11; Code Civ. Proc., sec. 13.) The decision in *Derby* v. *Modesto*, 104 Cal. 522, [38 Pac. 900], does not hold to the contrary. The plaintiff and others interested filed written objections to the change of grade on February 24, 1908. If the filing of objections were necessary to the point made in opposition to the resolution, these objections were filed within the time allowed by law for that purpose.

The objections stated were: 1. That the public interest and

convenience did not require the change; and 2. That the petition upon which the council acted in passing the resolution was not signed by owners of a majority of the property affected by the change of grade proposed in the resolution. The council did not fix any time for hearing said objections nor give any notice of such hearing. No hearing or opportunity to be heard was given by the council to the plaintiff or to the persons signing the said objections or any of them. The council took no action thereon and failed and neglected to hear or pass upon the same. The complaint alleges that the owners of the majority of the property affected by said change of grade did not petition therefor.

The ordinance declaring the grades changed in conformity with the resolution of January 20th was passed on July 20, 1908, five months after the filing of the aforesaid objections. It is claimed by the defendants that the action of the council in declaring the grade changed was, in effect, an adjudication by it that the petition for such change was in fact signed by the necessary majority of the owners, and that such adjudication is conclusive. In support of this claim counsel cite *Spaulding* v. *Homestead Assoc.,* 87 Cal. 40, [24 Pac. 600, 25 Pac. 249]; *People* v. *Los Angeles,* 133 Cal. 338, [65 Pac. 749]; *German etc. Soc.* v. *Ramish,* 138 Cal. 130, [69 Pac. 89, 70 Pac. 1067]; and *Chase* v. *Trout,* 146 Cal. 370, [80 Pac. 81]. In opposition to this claim plaintiff cites *Mulligan* v. *Smith,* 59 Cal. 206; *Kahn* v. *Board,* 79 Cal. 396, [21 Pac. 849] *Zeigler* v. *Hawkins,* 117 U. S. 683, [6 Sup. Ct. 919, 29 L. Ed. 1019], and *Dyer* v. *Miller,* 58 Cal. 585. These apparently conflicting decisions make it necessary to deal with the question at some length.

It is necessary at the outset to state some fundamental distinctions which have not always been noted and which serve to explain some of the decisions. Where a statute requires such a petition to be filed as a condition precedent to the making of such order, the board or council has no power to make the order until a sufficient petition has been filed. This is settled by the cases of *Turrill* v. *Grattan,* 52 Cal. 97; *Dyer* v. *Miller,* 58 Cal. 585; *Mulligan* v. *Smith,* 59 Cal. 206, and *Kahn* v. *Board,* 79 Cal. 396, [21 Pac. 849], and as to that point there is no dispute. But the necessity for such petition is the creature of the statute. It is not required by any constitutional

guaranty. From this it follows that the statute may dispense
with such requirement, or it may provide that the decision
of the board or council as to its sufficiency, or any subsequent
act depending upon it, such as the issuance of the bonds, shall
be conclusive evidence of the fact that a sufficient petition
has been filed. Such provisions will be upheld as valid.
(*Chase* v. *Trout,* 146 Cal. 356, [80 Pac. 81].) In the case
just cited, and in *German etc. Society* v. *Ramish,* 138 Cal. 130,
[69 Pac. 89], it was held that the conclusive evidence clause of
the Street Improvement Bond Act of 1893 cured all such de-
fects. Another distinction is to be made between the proceed-
ings of a board or council acting in pursuance of some dele-
gated legislative authority in creating or extending a political
subdivision of the state, as a county or a city, a proceeding
which does not directly affect private property, and proceed-
ings to open, grade, regrade, or improve a street, which do
directly charge or affect private property. (*People* v. *Ontario,*
148 Cal. 632, 634, [84 Pac. 205] ; *People* v. *Loyalton,* 147 Cal.
779, [82 Pac. 620] ; *Dean* v. *Davis,* 51 Cal. 412; *In re Madera
Irr. Dist.,* 92 Cal. 323, [27 Am. St. Rep. 106, 14 L. R. A. 755,
28 Pac. 272, 675].) The creation of a city and the annexation
of territory thereto are matters delegated to the legislature,
acting by means of general laws, by which some board or
council is invested with authority in that behalf. If the stat-
ute provides that such proceeding may be begun by the filing
of a petition with the particular board or council having the
authority, the fact that such body acts upon a petition which
does not appear bad upon its face, and proceeds thereon ac-
cording to law, is usually held to be conclusive of the suffi-
ciency of the petition against any collateral attack. *People*
v. *Los Angeles,* 133 Cal. 338, [65 Pac. 749], was a case of this
character. It was in *quo warranto* to test the validity of the
annexation of territory to the city. It is obvious that every-
thing there said concerning the conclusive effect of the *ex parte*
action of the council would be entirely *obiter,* if attempted to
be applied to proceedings against or directly affecting private
property. It has been sometimes cited in cases of the latter
class without noting the distinction. (See *German etc. Soc.*
v. *Ramish,* 138 Cal. 130, [69 Pac. 89, 70 Pac. 1067] ; *Chase*
v. *Trout,* 146 Cal. 369, [80 Pac. 81].)

    In *German etc. Society* v. *Ramish,* the declaration that the

making of the order changing the grade was conclusive evidence of the sufficiency of the petition is *obiter dictum.* The question presented was whether or not it was *prima facie* evidence and good in the absence of any evidence to the contrary. In *Chase* v. *Trout,* the passage was quoted from *German etc. Society* v. *Ramish,* to the effect that such order was conclusive evidence, but the passage was not expressly approved and the opinion immediately proceeds to show that the point was not involved in the case. In both the cases, as above stated, the curative clause of the Bond Act operated to cure all such defects in previous proceedings. In *Spaulding* v. *Homestead Assoc.,* 87 Cal. 40, [24 Pac. 600, 25 Pac. 249], the court was considering a statute which provided for a hearing upon the sufficiency of the petition in this respect and declared that the decision upon such hearing should be final and conclusive. The decision was expressly put upon that ground and it was thereby distinguished from *Mulligan* v. *Smith,* 59 Cal. 206, and *Kahn* v. *Board,* 79 Cal. 396, [21 Pac. 849], in which cases the statute did not provide for such hearing or decision. Inasmuch as the legislature was not bound by any constitutional mandate to require the previous filing of such petition, it follows that its declaration that the subsequent decision of the board should foreclose further inquiry on the subject, would be valid and controlling.

In this case, as we have seen, objections to the sufficiency of the petition in this respect were filed, but no hearing thereon was allowed. The part of the statute above quoted does not require or provide for such hearing. There is no provision declaring that any subsequent act, ordinance, or order shall be final or conclusive as to such objections. If the resolution of intention merely calls for the change of the official grade and does not declare an intention to do the work of grading the street to the proposed grade, and no claim for damage as provided in section 39 is filed, the simple making of the order, after the expiration of thirty days, terminates the proceeding and establishes the official grade. Section 39 provides for the filing of a petition, within the thirty days, by any property-owner, claiming that his property will be damaged "by the proposed change if completed." Thereupon commissioners must assess the benefits, damages, and costs (sec. 40) and report the assessment to the council (sec. 44).

The council must give notice that said report will come up for confirmation on a day named, at or before which time written objections to the confirmation thereof may be filed. Upon the hearing of such objections the assessment may be confirmed, corrected, or modified, or rejected and a new assessment ordered (sec. 46). When finally confirmed by the council and delivered to the street superintendent, the assessment becomes due and constitutes a lien on the property assessed (sec. 48). Such lien may be enforced by a sale of the lots in the same manner as in the case of delinquent tax-sales. The street superintendent's deed is made *prima facie* evidence of the regularity of all proceedings (sec. 49). This is the only provision in the act declaring any presumption of regularity. It does not make such deed conclusive and, of course, the deed does not have any effect until it is executed. The act of 1893 is amendatory of the act of 1891 (Stats. 1891, p. 116), which was declared to be supplementary to the act of March 18, 1885 (the Vrooman Act). Section 52 of the amendatory act of 1893 declares that all other provisions contained in the Vrooman Act shall apply to all the matters in the supplementary act, if not in conflict therewith. This, of course, does not include subjects covered by the supplementary act itself. The Vrooman Act provides for work upon streets and does not provide for the establishment of official grades, nor for the assessment and payment of damages caused thereby. We find nothing in that act that could be applied to a change of grade and which would operate to make the order changing such grades conclusive of the sufficiency of the petition therefor. We have, therefore, no legislative declaration that such order is, or shall upon any event become conclusive.

In this state of the law, the authorities on the point in question are clear. The establishing of the official grade affects the property abutting thereon. Whatever conditions for the protection of the property-owner are prescribed by the statute, as essential to the power of the local board to make the change, must be complied with, or the power will not exist. If no mode is provided for the ascertainment of the existence of such conditions precedent and for the adjudication thereof, the jurisdictional fact must remain open for inquiry whenever the validity of the order is lawfully called in question.

In *Mulligan* v. *Smith*, 59 Cal. 206, the act of 1872, for the opening of Montgomery Avenue in San Francisco, was involved. That act authorizes the proceeding only upon the petition of the owners of the majority of the frontage of the property to be affected. It was held (p. 230) that such petition was jurisdictional; that neither the certificate of the mayor that it was sufficient, nor his action under it, nor that of the board of public works, nor the judgment of the county court in confirming the assessment subsequently made in the proceeding, were conclusive of the fact that the owners of the majority frontage had signed the petition, and that a property-owner could show that it was not thus signed in a suit against him in ejectment founded upon a deed made upon a sale under the assessment lien. In *Kahn* v. *Board*, 79 Cal. 396, [21 Pac. 840], the same question was presented in an action by the holder of bonds issued in the proceeding, it being a suit in *mandamus* to compel the levy of a tax to pay said bonds. It was there held, following and approving *Mulligan* v. *Smith*, 59 Cal. 206, that the board of supervisors in such suit could show that the original petition was not signed by the owners of a majority of the frontage and that this fact thus shown rendered the proceedings invalid. In *Zeigler* v. *Hopkins*, 117 U. S. 683, [6 Sup. Ct. 919, 29 L. Ed. 1019], the question of the validity of the Montgomery Avenue bonds came before the supreme court of the United States and that court followed and approved *Mulligan* v. *Smith*, 59 Cal. 206, and *Kahn* v. *Board*, 79 Cal. 396, [21 Pac. 849], on that point.

Mr. Dillon states the rule as follows: "Where the power to pave or improve depends upon the consent or petition of a given number or proportion of the proprietors to be affected, this fact is jurisdictional, and the finding of the city authorities or council that the requisite number had consented or petitioned is not, in the absence of legislative provision to that effect, conclusive; the want of such assent makes the whole proceeding void, and the non-assent may be shown as a defense to an action to collect the assessment, or may, it has been held, be made the basis of a bill in equity to restrain a sale of the owner's property to pay it," citing a large number of authorities.

The case of *Miller* v. *Amsterdam*, 149 N. Y. 288, [43 N. E. 632], is exactly in point. The suit was a collateral attack upon

a proceeding under a statute substantially the same as that here involved. Referring to a similar petition by property-owners, the court said: "There was no express authority (in the statute) to decide upon its sufficiency. While it was the duty of the council to consider it, there was no implied authority to base a judicial decision upon it. Implied authority that may deprive a man of his property is not favored by the law. There is nothing in the statute, which conferred all the powers possessed by the council, to suggest judicial action on the part of that body with reference to the subject"; and, quoting from *Sharpe* v. *Speir,* 4 Hill (N. Y.) 88, in a similar case: "The defendant insists that the petition conferred jurisdiction on the trustees . . . provided they should judge that a majority of the persons intended to be benefited had signed; that by maintaining the petition and proceeding with the work, the trustees adjudicated upon the question and determined that a majority had petitioned; and that this judgment of the trustees is conclusive upon all persons so long as it remains unreversed. It is impossible to maintain that in this matter the trustees were sitting as a court of justice with power to conclude anyone by their determination. True, they were called upon to decide for themselves whether a case had arisen in which it was proper for them to act, but they acted at their peril. They could not make the occasion by resolving that it existed. They had power to proceed if the majority petitioned, but without such petition they had no authority whatever. They could not create the power by resolving that they had it." (See, also, *Graves* v. *Otis,* 2 Hill (N. Y.) 466; *Jex* v. *Mayor,* 103 N. Y. 539, [9 N. E. 39]; *Corry* v. *Gainor,* 22 Ohio St. 593; *Campbell* v. *Park,* 32 Ohio St. 544; *McVey* v. *Danville,* 188 Ill. 428, [58 N. E. 955]; *State* v. *Mayor,* 62 N. J. L. 621, [43 Atl. 578].

Upon these authorities and for these reasons we hold that, according to the allegations of the complaint, the change of grade was not legally established. Consequently, a subsequent proceeding to grade the street to that grade would be unauthorized. As the defendant may, however, take issue on this allegation and plaintiff may not establish it on the trial, we think it necessary to consider a question arising upon the subsequent steps in the proceedings.

The commissioners to whom was referred the plaintiff's

claim for damages from the change of grade, reported that the change would cause no damage to plaintiff's property in excess of the benefits it would receive therefrom and the report awarded him no damages. He objected to the report on this ground, but his objections were overruled and the report was confirmed by the council. Thereupon plaintiff informed the council that he refused to abide by the decision and gave notice to the council and all the officers of the city that he claimed damages on account of the said change of grade, notwithstanding such confirmation.

The statute authorizes an assessment upon the property benefited to pay the damages awarded, and provides that when the money is collected thereon, the owners to whom damages are allowed are to be notified that they will be paid accordingly, and that if any such owner refuse to accept the amount in satisfaction of his damages, the city may have the damages assessed by regular proceedings in condemnation under the Code of Civil Procedure. No money was ever tendered to plaintiff in satisfaction of the damages and no condemnation suit was begun against him. In March, 1909, the proceeding to do the work of reducing the street to the grade claimed to have been established by the aforesaid order changing the grade, was begun, and under it the defendants now propose to do that work. The theory of the defendants is that plaintiff is bound by the report of the commissioners, as confirmed by the council after he was fully heard in regard to it, declaring that he was not damaged, and that when the report, as confirmed, is to the effect that no damage will be caused by the grade established, no suit in condemnation ‘or payment of damages is necessary before doing the work which may cause such damage.

This theory cannot be upheld. The statute is intended to provide a mode by which the damage to private property caused by the public improvement may be ascertained to the satisfaction of the owners and paid over to them, without the delays consequent upon a suit at law. If such mode succeeds and the owner accepts the amount awarded, that is an end to the matter. The legislature, however, understood the force of the constitutional provision that "private property shall not be taken or *damaged* for public use without just compensation having been first made to, or paid into court for the

owner, . . . which compensation shall be ascertained by a jury, unless a jury be waived, as in other civil cases in a court of record, as prescribed by law." (Art. 1, sec. 14.) The statute recognizes the right of the abutting owner under this provision, to refuse the award made by the council and to insist upon submitting the question of his damage to a jury, and accordingly it expressly provided that he might do so. He cannot be deprived of this constitutional guaranty by the decision of a city council that he is not damaged. His right to a trial by jury does not depend upon the provisions of the statute but upon the constitution. The fact that the statute makes no provision for a condemnation suit, except where damages are awarded to the owner and he is unwilling to accept the amount allowed, does not deprive him of the right to a jury trial in cases where no damages have been awarded him in the proceedings. Under the constitution, the ascertainment and payment of such damages in the mode there prescribed, is a condition precedent to the right of the city to do the public work which will cause the damage. It follows that the property-owner has the right to enjoin such work until his damages have been lawfully ascertained and paid in the manner prescribed by the constitution. (*Geurkink* v. *Petaluma,* 112 Cal. 306, [44 Pac. 570]; *Bigelow* v. *Ballerino,* 111 Cal. 559, [44 Pac. 307]; *Duncan* v. *Ramish,* 142 Cal. 694, [60 Pac. 661]; *Eachus* v. *Los Angeles,* 103 Cal. 620, [42 Am. St. Rep. 149, 37 Pac. 750]; 2 Lewis on Eminent Domain, secs. 618, 634, 638.) Consequently, if it should turn out that the change of grade was lawfully ordered, the plaintiff would still be entitled to enjoin the work until his damages, if any, in excess of benefits shall have been lawfully ascertained and paid.

It is claimed that there is no sufficient allegation that the plaintiff's property would be damaged by the proposed work. The actual amount of damage in money is not stated, but it does appear from the facts stated that the elevation of the street with respect to plaintiff's property will be seven feet lower at one end and five feet higher at the other end than it would be if the street conformed to the previously established grade, and that in consequence thereof plaintiff's ingress and egress to and from the lot will be impeded and interfered with. This sufficiently shows that the plaintiff will

be substantially damaged by the work complained of if it is allowed to proceed to completion.

The judgment is reversed.

Angellotti, J., and Sloss, J., concurred.