## LATHROP *v.* CITY OF BUFFALO.

### December, 1861.

Where the statute recognizes two classes of local improvements, one of which it forbids to be made except on petition of a majority of those to be affected by the assessment, an assessment for a work including improvements of both classes cannot be made on a petition of a mere majority of all those affected by any part of the work. The certificate of the assessors should show that the petition is by a majority of those affected by that part of the work for which a petition is necessary.

The charter of the city of Buffalo allowed assessments for paving and for crosswalks to be made in the discretion of the common council, but assessments for grading could only be made on a petition of a majority of those interested or liable to be assessed. *Held*, that an assessment for grading a street, and for paving, and crosswalks at intersections of other streets, made upon petition of a majority of all the persons affected by any of the work, was invalid, it appearing from the assessment that a majority of those affected by the grading were not petitioners.[*]

---

[*] In the similar case of DOLAN, decided at the same time, one of the questions was whether the uniting two streets which were one continuous way, in the same proceedings, was a fatal defect within this rule, and on this question a majority concurred with the minority who dissented upon the main question, in holding that it was not a fatal defect. See also Howell *v.* City of Buffalo, vol. 2, p. 412, of this series, and cases cited.

Laura C. Lathrop brought this action, in the supreme court, against the city of Buffalo, to have an assessment it had laid upon her real property, for expenses of a local improvement, declared illegal and void, and the city enjoined from prosecuting the improvement, or enforcing the collection of the assessment.

The making of assessments for local improvements was regulated by title VIII. of the charter of 1853 (*L.* 1853. c. 447), and section 19 of that title as amended in 1856 (*L.* 1856, p. 143, c. 99) gave power to the common council to *grade,* pave and *repair streets,* &c., and to *construct,* relay or *repair* cross and side *walks, drains,* wharves, piers, sewers, receivers, &c., to determine the amount to be assessed, and direct the city assessors to assess the same; but with the following qualification:

" But no such improvement other than the *construction and repairs* of *sewers, piers, receivers, side and crosswalks,* and the *repairs* of any *street.* alley, lane, or highway, drains, basins, canals, docks, slips, wharves, and aqueducts shall be ordered, the expense of which shall exceed the sum of two hundred dollars, except upon the application of a majority of the property holders directly interested therein, and residents of the said city; nor shall any such work be ordered until there shall be presented to the common council and filed with the city clerk, a certificate signed by the city assessors, or a majority of them, stating that such application is made by a majority of such property holders resident in said city, and liable to be taxed or assessed to pay for the same, which certificate shall be conclusive evidence that such application is made by a majority, as required by this section."

The city charter of 1853, after regulating the mode of assessing taxes on lands and giving notice of sale for non-payment, requires the comptroller to keep a record of assessments for local improvements, which, by the rolls returned to him, should appear unpaid, and to give the like notice of sale as in case of unpaid taxes. *L.* 1853, c. 447, title V. p. 476, § 14. Then follow sections regulating sales and the record thereof.

Section 16 contains a provision that " a certificate of the sale of each parcel of land sold shall be made by the comptroller, and delivered to the purchaser. Such certificate shall contain

a description of the property and the term for which it was sold, and state the particular tax, and the amount thereof, with interest and expenses, for which the sale was made, and the time when the right to redeem will expire."

Section 24 contains this provision: " The certificates of sale shall be presumptive evidence of the facts stated therein. A declaration of sale shall not be granted until the certificate has been canceled and filed with the comptroller, unless the loss or destruction thereof be established by affidavit, to the satisfaction of the council, which affidavit shall be filed with the comptroller."

Section 18 contains the following provision: " If any real estate so sold shall not be redeemed, or the sale be defeated, as hereinafter provided, the common council shall grant to the purchaser, his legal representatives or assignees, *upon due proof of the facts entitling him or them thereto,* and upon the payment of one dollar, for the benefit of the city, a declaration in writing, under the corporate seal, signed by the mayor and attested by the clerk, containing a description of the premises, *the fact of assessment,* advertisement and sale, the date of the sale, and the period for which the premises were sold; which declaration may be recorded as a lease of real estate, and shall be presumptive evidence, in all courts and places, that such tax or assessment was legally imposed, and that due proceedings to authorize such sale were had."

The main objection to the assessment, in this case, and the only one involved in the decision, is fully stated in the opinion.

*The referee* held, that the petition and certificate were not within section 20 of the act of 1856, and section 19, title, 8, of the city charter, because the petition and certificate embraced the construction of the cross walks, sewers and receivers, together with the grading of the street. Accordingly, he reported that the assessment made upon the real estate of the plaintiff was illegal, and that plaintiff was entitled to an injunction.

*The supreme court,* at general term, reversed the judgment entered upon the report of the referee, and ordered a new trial, with costs to abide the event.

Plaintiff appealed to this court.

*George Wadsworth*, for plaintiff, appellant.—The effect of *L.* 1858, c. 372, § 8, p. 645, is to except the taxpayers of Buffalo from the rule in Meserole *v.* Brooklyn, 26 *Wend.* 132; Haywood *v.* Buffalo, 14 *N. Y.* (4 *Kern.*) 416; and gives a right of action to prevent the collection of an illegal assessment. With respect to the omission in the certificate, of the statement that the application had been made by a majority of the resident property holders, see Wright *v.* Briggs, 2 *Hill*, 77; Doughty *v.* Hope, 1 *N. Y.* (1 *Comst.*) 79. As to the non-enumeration by the council of the sewers, &c., and the delegation of their duty, see Thompson *v.* Schermerhorn, 6 *N. Y.* (2 *Seld.*) 92. Counsel for respondent in supreme court, in order to show that proceedings to levy taxes should show the proper jurisdiction on the face of them, cited Doughty *v.* Hope, *above;* Sharp *v.* Speir, 4 *Hill*, 76, 92; *Re* Flatbush-avenue, 1 *Barb.* 286; Thatcher *v.* Powell, 6 *Wheat.* 119; S. C. 5 *Pet. Cond.* 28.

*Edwin Thayer*, for defendants, respondents.

COMSTOCK, Ch. J.—According to the obvious construction of the charter of Buffalo, as amended in 1856 (*Laws of* 1856, p. 143, § 19), the common council has no power to grade and pave a street at a cost exceeding two hundred dollars, except on the application of a majority of the resident property holders interested in the improvement. The certificate of the assessors is declared to be the evidence that such an application has been made.

The improvement in question embraced not only the grading and paving of Court-street, but also cross-walks upon that and the intersecting streets, and sewers and receivers. It was signed by twelve parties, who were certified by the assessors to be a majority of the property holders interested in such improvement and taxable therefor. It appears, however, from the roll made by the same assessors, that some twelve persons were taxed as holders of property on Court-street, and that out of those persons, only four were signers of the application.

The cost of grading and paving was laid wholly upon twelve, including the plaintiff and seven others, who did not unite in the application.

III—3.

An additional number of persons were assessed in respect to property on other streets which intersected the one in question.

The expense of the intersecting cross walks was very properly laid upon them.

Thus, more than five-sixths of the whole improvement must be paid for, if the proceedings are valid, by persons two-thirds of whom did not apply for it.

This was wrong in principle and results; but the question is, whether the proceedings were regular. It is said they were strictly so.

The certificate of the assessors, it is claimed, *was according to the statute*, although it was falsified by their own subsequent action.

In my opinion the difficulty was this:

A costly improvement, that of grading and paving the street, which required the petition of those interested, was united with the auxiliary work of *making sewers*, &c., which require no such petition. By uniting these objects, a majority of those interested in both were procured to sign the application.

In a joint meeting of both classes of persons, more than half of all the individuals composing it would be found to favor the scheme. But I think the statute means that where the paving of a street will cost more than two hundred dollars, it must be applied for by a majority of those interested in it, and who must pay for it.

Now the certificate of the assessors did not speak in this sense. It put the paving and the crosswalks together, and it only said that the signers of the petition were a majority of those interested in *all* the objects which were in contemplation.

This mode of paving streets and compelling citizens to pay therefor, may easily lead to serious abuses. Every one can see that the persons interested in paving a street and those interested in making the footwalks which cross it at the corners of the intersecting streets, may be very different.

The one kind of work improves the particular street in which it is done. The other kind is, more properly speaking, an improvement for the various streets which intersect the former. The assessment, with obvious propriety, was made

on these principles, and the only vice in the proceeding was that those interested in the principal work did not ask it to be done as the law required.

The judgment of the supreme court should be reversed and that entered on the report of the referee affirmed.

In this opinion a majority of the judges concurred, S. L. SELDEN, J., delivering an opinion to the same effect.

Judgment of the general term reversed, and that of the special term affirmed, with costs.