JOHN C. MILLER, Respondent, *v.* CITY OF AMSTERDAM, Appellant.

1. MUNICIPAL CORPORATIONS — DECISION AS TO EXISTENCE OF A FACT, PRECEDENT TO AUTHORITY TO ACT. Where the existence of a fact is necessary before the officers of a municipal corporation can act and no provision is made in the statute creating the corporation for the determination of the fact, no authority to ascertain it can be implied; their decision that it exists is not a judicial determination and may be inquired into collaterally when they take subsequent action upon the assumption that the fact existed.

2. STREET PAVING — ASSESSMENT — SUFFICIENCY OF PETITION REQUIRED TO CONFER JURISDICTION — DECISION OF COMMON COUNCIL. Where the charter of a city provides that streets may be paved only upon a petition therefor by the owners of a majority of the lineal feet fronting on the street, and does not expressly authorize the common council to determine that this prerequisite has been fulfilled, and the owners of the required frontage do not sign the petition, a decision of the common council that a majority did sign is not a judicial determination of the fact; and a subsequent ordering of the pavement is unauthorized, and an assessment made therefor is void, for want of jurisdiction.

*In re Kiernan,* 62 N. Y. 457; *Town of Cherry Creek* v. *Becker,* 123 N. Y. 161, distinguished.

3. CONFIRMATION OF ILLEGAL LOCAL ASSESSMENT — EFFECT OF APPEARANCE AT HEARING. Where the charter of a municipal corporation provides that the confirmation of an assessment for a local improvement by its common council, at a final hearing, shall be conclusive upon all parties interested, but does not contemplate any consideration of the question of jurisdiction at such hearing, the fact that a person interested appeared at the hearing and protested against the legality of an assessment, void through the latent insufficiency of the signatures to the preliminary petition required to give jurisdiction, does not conclude him, and, in case of confirmation, he may maintain an action to set the assessment aside.

*Miller* v. *City of Amsterdam*, 78 Hun, 609, affirmed.

(Argued April 8, 1896; decided April 21, 1896.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made May 8, 1894, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

This action was brought to set aside an assessment, valid on its face, upon real estate belonging to the plaintiff, for a local improvement alleged to have been made by the city authorities without jurisdiction. The answer denied the alleged irregularities, and set forth facts showing that all the proceedings on the part of the defendant were regular and valid.

The action was tried before a referee, who found that the city authorities did not acquire jurisdiction, and ordered judgment in favor of the plaintiff, vacating the assessment and restraining the defendant from taking any steps to enforce the same. Upon appeal to the General Term the judgment was affirmed, and the defendant thereupon appealed to this court. The facts, so far as material, appear in the opinion.

*Edward P. White* for appellant. The petition was such as to require the common council to decide upon its sufficiency, and the council did decide, upon evidence showing an apparent majority, that it was sufficient. (*Hill* v. *Draper*, 10 Barb. 458; *Tingue* v. *Village of Port Chester*, 101 N. Y. 294.) The common council acquired jurisdiction of the subject-matter. (*O' Connor* v. *Huggins*, 113 N. Y. 511; *Staples* v. *Fairchild*, 3 N. Y. 41; *Miller* v. *Brinkerhoff*, 4 Den.

119; *Brittain* v. *Kinnaird*, 1 Brod. & Bing. 432; *Mould* v. *Williams*, 5 Ad. & El. [N. S.] 469; *Betts* v. *Bagley*, 12 Pick. 572; *Skinnion* v. *Kelley*, 18 N. Y. 355; *Colton*, v. *Beardsley*, 38 Barb. 39, 51, 52; *Ham* v. *Silvernail*, 7 Hun, 35; *Allen* v. *U., I. & E. R. R. Co.*, 15 Hun, 80; *U. S.* v. *C. L. Co.*, 148 U. S. 31.) The final hearing by the common council, upon due notice, was conclusive of the matters here in question. (*Porter* v. *Purdy*, 29 N. Y. 106; *In re Kiernan*, 62 N. Y. 457; *Dyckman* v. *Mayor, etc.*, 5 N. Y. 434; *Town of Cherry Creek* v. *Becker*, 123 N. Y. 161.) The jurisdiction once acquired was not lost. (*Tingue* v. *Village of Port Chester*, 101 N. Y. 294, 300; *Mayer* v. *Mayor, etc.*, 101 N. Y. 284, 288; *Hoffeld* v. *City of Buffalo*, 130 N. Y. 387; *Weinckie* v. *N. Y. C. & H. R. R. R. Co.*, 133 N. Y. 656; 61 Hun, 619.) These actions are in equity, but there is no equity in the actions. (*Voght* v. *City of Buffalo*, 133 N. Y. 464.)

*H. V. Borst* for respondent. The petition on which the common council acted in laying the pavement was insufficient. It did not contain the names of the owners owning a majority of the lineal feet fronting on the street. (*Pellas* v. *Motley*, 62 N. Y. S. R. 272; *Douglas* v. *Cruger*, 80 N. Y. 19; *Fitzgerald* v. *Topping*, 48 N. Y. 444; *Wilder* v. *Ranney*, 95 N. Y. 7; *Genet* v. *Talmadge*, 1 Johns. Ch. 561; *L'Amoureaux* v. *Rensselaer*, 1 Barb. Ch. 34; *Noyes* v. *Blakeman*, 6 N. Y. 567; *Coughlin* v. *Fay*, 68 Hun, 521.) The petition not having been signed by the owners owning a majority of the lineal feet fronting on the street, the common council of the city had no jurisdiction to lay the pavement and levy the assessment to meet the expense therefor. (*Merritt* v. *Vil. of Portchester*, 71 N. Y. 309; *Sharp* v. *Speir*, 4 Hill, 76; *Stebbins* v. *Kay*, 123 N. Y. 31; *Hopkins* v. *Mason*, 42 How. Pr. 115; *People ex rel.* v. *Haines*, 49 N. Y. 587; *In re S. A. M. E. Church*, 66 N. Y. 395; Laws of 1816, chap. 95, § 3; Laws of 1824, chap. 193, § 3; *Sharp* v. *Johnson*, 4 Hill, 96; *Graves* v. *Otis*, 2 Hill, 466; *Jex* v. *Mayor, etc.*, 103 N. Y. 536; *Folmsbee* v. *City of Amsterdam*, 142 N. Y. 118.)

The decision of the common council that the petition contained the majority required is not conclusive and may be questioned in such an action as this. (*Cagwin* v. *Town of Hancock*, 84 N. Y. 532; Dillon on Mun. Corp. [4th ed.] § 800; *Lathrop* v. *City of Buffalo*, 3 Abb. Ct. App. Dec. 30; *Beardslee* v. *Dolge*, 143 N. Y. 160; *In re N. Y. C. Protectory*, 77 N. Y. 342; *Nat. Bank of C.* v. *City of Elmira*, 53 N. Y. 49; *Chegaray* v. *Jenkins*, 5 N. Y. 376; *Mygatt* v. *Washburn*, 15 N. Y. 321; *Litchfield* v. *Vernon*, 41 N. Y. 123; *Adams* v. *S. & W. R. R. Co.*, 10 N. Y. 332.) The charter does not make the decision of the common council, as to the sufficiency of the petition conclusive. They have no power to examine or question it, or adjudicate upon it. (*Hassan* v. *City of Rochester*, 67 N. Y. 528; *In re S. Ave. M. E. Church*, 66 N. Y. 395; *In re Hearn*, 96 N. Y. 378; *Joslyn* v. *Rockwell*, 128 N. Y. 339; *Newell* v. *Wheeler*, 48 N. Y. 487.) The assessment, being void for want of jurisdiction, an action lies to vacate it and to remove the cloud it creates on plaintiff's title. (*Rumsey* v. *City of Buffalo*, 97 N. Y. 114; *Crooke* v. *Andrews*, 40 N. Y. 547; *Bruecher* v. *Vil. of Port Chester*, 101 N. Y. 240.) The bidders for the work and the contractors were required to guarantee to keep the pavement in repair for five years. This requirement from the bidders and contractors renders the assessment void. (*People ex rel.* v. *Maher*, 56 Hun, 81; *Squire* v. *Cartwright*, 67 Hun, 223; *In re Rosenbaum*, 53 Hun, 478; *In re Deering*, 93 N. Y. 361; *Hopkins* v. *Mason*, 42 How. Pr. 115; *People ex rel. Williams* v. *Haines*, 49 N. Y. 587; *Hassan* v. *City of Rochester*, 67 N. Y. 529; *In re E. I. Savings Bank*, 75 N. Y. 388; *Brady* v. *Mayor, etc.*, 20 N. Y. 312.) The fact that the assessment was confirmed does not preclude plaintiff from the relief sought. (*Hassan* v. *City of Rochester*, 67 N. Y. 529; *In re Turfler*, 44 Barb. 46; *In re Petition of Sharp*, 56 N. Y. 257.) Plaintiff did not waive his right to object to the proceedings, or give jurisdiction by appearing before the assessors. (*In re City of Buffalo*, 78 N. Y. 362; *People ex rel.* v. *Vil. of Whitney's Point*, 32 Hun, 508.)

VANN, J.   The charter of the city of Amsterdam authorizes the common council to cause any street in that city to be paved, and to determine by resolution what part of the expense, not exceeding twenty-five per cent, shall be paid by a general tax and what part by a special assessment upon such real estate as the city assessors shall deem more immediately benefited by the improvement.  (L. 1885, ch. 131, § 95.)   It is further provided that no street shall " be paved. by said city unless the owners, owning a majority of the amount of lineal feet fronting on the part of the street proposed to be paved * * * petition therefor and the same shall be ordered by a vote of two-thirds of the common council."   (Id. § 102.)   The charter contains no provision authorizing or requiring any board or officer to ascertain whether a petition for a pavement is signed by the owners of the requisite number of feet or not.   It provides no means for a judicial determination of the fact, although in defining the general powers of the common council and its committees, authority is given " to issue a summons to any person to appear and testify before them in respect to any matter pending or referred to them."   (Id. § 37.)

· On the 29th of September, 1890, a petition signed by sixty-five persons, but not including the plaintiff, was presented to the common council, the body of which is as follows, viz.: " The undersigned, property owners on East Main street, respectfully petition your honorable body for the passage of a resolution or ordinance ordering the pavement of said street between Bridge street and the end of the street car track, as formerly laid."   The petition was referred to the committee on streets, which reported on the first of October, 1890, that the total frontage upon the street was 8,200 feet, or, after deducting 600 feet for intersecting streets, 7,600 feet, of which 4,065 feet, or more than a majority, was represented by the petition. The report was accepted, and thereupon a resolution was passed, unanimously, which, after reciting that " the owners of property on East Main street, in the city of Amsterdam, owning the majority of the amount of lineal feet fronting on

said street between Market street and the easterly margin of
Eagle street, have petitioned for the paving of such portion of
East Main street," granted the prayer of the petition and
directed that the improvement be made accordingly. The
usual proceedings were then taken, the street was paved and
an assessment was made upon the property of those especially
benefited, including the sum of $398.09 upon certain real
estate belonging to the plaintiff.

In fact, as the referee found and as is now conceded, the
owners of the required frontage upon the street " did not sign
the petition," and the main question presented for decision is
whether the common council acquired jurisdiction to lay the
pavement. The appellant claims that the petition was such
as to require the common council to decide upon its sufficiency ;
that the council did decide, upon evidence showing an
apparent majority, that it was sufficient, and that even if it
decided wrong its action was of a judicial character, and can-
not be inquired into collaterally. The respondent claims that
when the existence of a fact is necessary before the officers of
a municipal corporation can act, and no provision is made in
the statute creating the corporation for the determination of
such fact, it can be inquired into collaterally when the officers
have acted on the assumption that the fact existed.

The common council had no inherent powers, but only such
as were conferred upon it by statute, and to such cases the
rule of strict construction is applied. It is conceded that
unless it acquired jurisdiction, its action was unauthorized
and void. It did not acquire jurisdiction by means of a peti-
tion signed by the requisite number of property owners,
because the requisite number did not sign the petition. The
command of the statute was that the pavement should not be
laid, unless a certain fact existed, and that fact did not exist.
Yet, as the common council, as it is assumed, decided in good
faith and with apparent reason, that the jurisdictional fact
existed, it is claimed that such decision protected the subse-
quent proceedings of the city authorities from collateral
attack. When that decision was made, there had been no

opportunity for any property owner to be heard. No notice
had then been given, and up to that point none was required
or authorized by the charter. There was no voluntary appear-
ance before the council by those interested. The decision was
*ex parte* in every sense. No method was provided to review it.
The officers who made the decision were not judicial officers.
Their duties were legislative and ministerial in character. To
hold that such officers virtually acquired jurisdiction by decid-
ing, even in good faith, that they had jurisdiction, would be an
anomaly, and would deprive the landowners of the protection
that it was the object of the statute to afford. Provisions,
similar to those under consideration, have existed for many
years in the charters of many cities throughout the state, yet
we are referred to no authority upholding the appellant's
position. Many cases have been before the courts in which
the validity of local assessments has been questioned on
various grounds, and the records of this court show numerous
opportunities to present the point now urged upon our atten-
tion, as it is said, for the first time.

The appellant defends its position by this reasoning; that
although the charter does not expressly charge the common
council with the duty of deciding the jurisdictional fact, such
duty is necessarily implied and is judicial in character ; that as
there was some evidence before the council that the required
majority had signed the petition, it was sufficient to require a
decision in respect to such majority; that the decision, when
made, was in the nature of an adjudication, which, if errone-
ous, could be corrected only by a direct proceeding for that
purpose, and if not so corrected the subsequent action based
thereon was not affected, however erroneous the adjudication
might be.

The defect in this argument is the assumption that there
was implied authority to ascertain the particular fact, and that
the decision that the fact existed was a judicial determination.
It is not open to dispute that where an officer is expressly
required to exercise his judgment upon the weight and
importance of evidence, and has jurisdiction to act, a wrong

decision of a question of fact fairly presented is in the nature of a judgment, which, even if erroneous, stands until reversed. Here, however, there was no evidence, in the usual sense of the word, to consider. The petition does not purport upon its face to be the petition of a majority. It is not verified, acknowledged or authenticated in any way. It contains no statement to estop even those who signed it. It has none of the sanctions or safeguards of evidence. There was no express authority to decide upon its sufficiency. While it was the duty of the council to consider it, there was no implied authority to base a judicial decision upon it. Implied authority that may deprive a man of his property is not favored by the law. There is nothing in the statute, which conferred all the powers possessed by the council, to suggest judicial action on the part of that body with reference to the subject under consideration. It is like the act considered in *Sharp* v. *Speir* (4 Hill, 76), which provided that " on application in writing of a majority of the persons owning property intended to be benefited," a certain improvement might be made. (L. 1824, chap. 193, § 8.) The court said : " Every statute authority, in derogation of the common law, to divest the property of one and transfer it to another, must be strictly pursued, or the title will not pass. This is a mere naked power in the corporation, and its due execution is not to be made out by intendment : it must be proved. * * * The fact that a majority petitioned for the improvement lies at the foundation of the whole proceeding ; and, unless that fact can be established, the whole is void from beginning to end. * * * The defendant insists that the petition conferred jurisdiction on the trustees * * * provided they should judge that a majority of the persons intended to be benefited had signed ; that by granting the petition and proceeding with the work, the trustees adjudicated upon the question and determined that a majority had petitioned ; and that this judgment of the trustees is conclusive upon all persons so long as it remains unreversed. It is impossible to maintain that in this matter the trustees were sitting

as a court of justice, with power to conclude any one by their determination. True, they were called upon to decide for themselves whether a case had arisen in which it was proper for them to act, but they acted at their peril. They could not make the occasion by resolving that it existed. They had power to proceed if a majority petitioned, but without such a petition they had no authority whatever. They could not create the power by resolving that they had it." Citing *Graves* v. *Otis* (2 Hill, 466). This case, which has been frequently cited with approval, we regard as analogous, and adopt the language quoted as applicable to the case in hand.

In a recent action, brought to recover the amount of an alleged illegal assessment paid under wrongful compulsion, the complaint, as the record shows, alleged that a petition, purporting to be that of the required majority, but not really such, was presented to the mayor and aldermen of the city of New York as the basis for paving Broadway. Upon a demurrer to the complaint for not stating a cause of action this court said: " The presentation of the proper petition is the basis of the jurisdiction of the common council to incur an expense for re-paving, reimbursable by local assessment. The statute requiring the presentation of a petition was designed for the protection of property owners. The initiation of the improvement without a petition was not an irregularity merely, but was a fundamental error. It was a condition precedent to the right to make an assessment for the improvement that it should have been petitioned for by the requisite number of property owners." (*Jex* v. *Mayor*, etc., 103 N. Y. 536, 539.) It was held that the money paid could be recovered back, and that it was not necessary that the assessment should be vacated before such an action would lie. The question arose collaterally, as the complaint shows. This is also true of *Lathrop* v. *City of Buffalo* (3 Abb. Ct. App. Dec. 30), where the same result was reached. It has been frequently held that where the right of assessors to act depends upon the existence of some fact, an assessment founded upon an erroneous determination by them as to the existence of the fact is illegal, and that they cannot acquire jurisdiction by

determining that they have it. (*National Bank of Chemung v. City of Elmira*, 53 N. Y. 49; *Matter of N. Y. Catholic Protectory*, 77 N. Y. 343; *Mygatt* v. *Washburn*, 15 N. Y. 316; *Chegaray* v. *Jenkins*, 5 N. Y. 376.) In deciding the case last cited, the court said: "The general principle is, that the proceedings of magistrates and officers having special and limited jurisdiction must bear on their face the evidence of their jurisdiction, or they will be judged invalid, and that in collateral actions their judgments may be questioned and disregarded, if it appear that in fact they had no authority to act in the given case."

So, in decisions made in town bonding cases, it is held that the jurisdiction of *quasi* judicial officers to make a decision in any case is always open to inquiry and that the decision may be attacked collaterally for want of jurisdiction. (*Cagwin* v. *Town of Hancock*, 84 N. Y. 532.) In this case it was said: "It is true that the assessors, in determining whether the requisite consents had been given and in making the affidavit exercised *quasi* judicial functions. * * * And that their determination embraced in their affidavit is in the nature of a judgment. But regarding the affidavit as a judgment, it was a judgment which they could render only if they had jurisdiction. By the express terms of the statute they were not to make the affidavit until the requisite consents were obtained. Until that time they had no jurisdiction to act. They could not obtain jurisdiction by determining that they had it. Whether *quasi* judicial officers and courts of limited special and inferior jurisdiction have jurisdiction to make a decision in any case is always open to inquiry, and their decision in any case can be attacked collaterally for want of jurisdiction."

In Dillon on Municipal Corporations (4th ed., § 800) the general doctrine is laid down in these words: "Where the power to pave or improve depends upon the assent or petition of a given number or proportion of the proprietors to be affected, this fact is jurisdictional, and the finding of the city authorities or council that the requisite number had assented or petitioned is not, in the absence of a legislative provision to

38

that effect, conclusive.   The want of such assent makes the whole proceeding void, and the non-assent may be shown as a defense to an action to collect the assessment, or may, it has been held, be made the basis for a bill in equity to restrain a sale of the owner's property to pay it."

The precise point under consideration was decided in accordance with the plaintiff's contention in *Holland* v. *Baltimore* (11 Md. 186).   (See, also, *Adams* v. *Saratoga & W. R. R. Co.*, 10 N. Y. 328 ; *Litchfield* v. *Vernon*, 41 N. Y. 123 ; *In re Sharp*, 56 N. Y. 257 ; *Beardslee* v. *Dolge*, 143 N. Y. 160, 165.) We find no case holding otherwise, except those founded upon statutes authorizing some board or officer to determine whether the petition was presented by a majority of the taxpayers. Such was the case of *In re Kiernan* (62 N. Y. 457), where a statute made the determination of the common council of Brooklyn, in respect to all the facts to be ascertained for the purpose of commencing and carrying on a proposed improvement, " final and conclusive."   (L. 1859, ch. 213, § 5.)   So in the *Town of Cherry Creek* v. *Becker* (123 N. Y. 161), the statute required the county judge to give notice and take proof as to the allegations of the petition, and "to adjudge and determine " as to the fact, and his judgment was given " the same force and effect as other judgments   *   *   *. in courts of record in this State."   (L. 1869, ch. 907 ; L. 1871, ch. 925, § 2.)   These and similar cases do not apply here, because the acts under which they arose made it the duty of some public officer to decide a question of fact, and gave to his decision the force and effect of a final judgment.

It is, however, further claimed by the defendant that, even if the proceedings were void at first for want of jurisdiction, they became valid and conclusive at last, owing to the personal appearance of the plaintiff before the common council at the final hearing authorized by the charter.   The statute provides a grievance day, or hearing before the assessors, upon notice, after the improvement has been completed and the assessment therefor has been made.   This is simply for the correction of errors of apportionment in making the assess-

ment, as the charter provides that " after such hearing " the assessors " shall make such corrections  *  *  *  as will, in their judgment, render the said assessment more just and equitable." (L. 1885, chap. 131, § 95.) After the assessors have made their corrections, it is their duty to deliver the assessment roll to the common council, and " any person conceiving himself aggrieved by the said assesssment " may be heard before that body, which is thereupon either to " confirm such assessment or annul the same. · If they confirm the same it shall be final and conclusive on all parties and persons interested, but if they annul the same, then all the proceedings of the assessors in relation thereto shall be void " and the assessors may make a new assessment.

This clearly refers to the equitable distribution of the tax, so that each person may pay only his proper share, and has no reference to the question of jurisdiction to do the work, because it had already been done. The plaintiff appeared before the common council at the time provided for a hearing before that body, and served a written notice stating that the assessment was illegal, and protesting against any attempt to collect it. He neither waived any right that he had, nor consented to any of the proceedings of the council with reference to the pavement. We think that this final hearing has no bearing upon the question of jurisdiction, but is for the purpose of securing a just apportionment of the tax. It refers to the manner of assessment, and not to the legality of the proceedings to pave. The assessment, when thus confirmed, became final and conclusive as an assessment or apportionment, in the sense that no re-assessment could be made. This is clear from the authority given to the assessors to make " corrections," and to the council to confirm or annul the corrected assessment, and in the latter event to the assessors to re-assess. The question of jurisdiction, through a petition signed by the requisite number, remained open to future inquiry, for the statute does not contemplate any consideration of that subject at that time. (*Newell* v. *Wheeler*, 48 N. Y. 486, 491.)

We think that the pavement was ordered and the assessment made without jurisdiction, and that the judgment appealed from should, therefore, be affirmed, with costs.

All concur.

Judgment affirmed.