[No. 4488.]

THE CITY OF DENVER ET AL. v. LONDONER ET AL.

1. **Cities and Towns—Public Improvements—Constitutional Law —Jurisdiction.**

Where a city charter authorizes the city authorities to order the grading, curbing and paving of streets, provided the owners of a majority of the frontage to be assessed shall petition therefor, a provision of the charter making the finding of the city council by ordinance that a petition was or was not filed, or was or was not subscribed by the required number of owners, conclusive in every court or other tribunal does not deprive such owners of any constitutional right and is not unconstitutional. And where the city council has by ordinance found as a matter of fact that such petition was filed and that it was signed by the required number of owners, the sufficiency of the petition on that ground cannot be questioned before the courts in a suit by the owners to annul the assessment.

2. **Cities and Towns—Public Improvements—Ordinance—Publication on Sunday.**

The fact that an ordinance creating a paving district in a city was published on Sunday, does not make the publication illegal.

3. **Cities and Towns—Public Improvements—Notice—Computation of Time—Sunday—Statutory Construction.**

Where a city charter required notice to be published giving owners of property to be assessed thirty days from the first publication within which to file complaints and objections before ordering a public improvement, the fact that the last

of the thirty days fell on Sunday would not give- such owners another day within which to file their complaints, and a hearing of such complaints set for Monday following the thirtieth day, was not premature. Where a statute requires an act to be done within a certain number of days, Sunday must be reckoned as one, though it happens to be the last, unless expressly or impliedly excluded. Code Section 382, fixing a different rule for computation of time, applies only to acts to be done as provided in the code with respect to procedure in courts of record.

4. Same—Opportunity of Owners to be Heard—Constitutional Law.

Where a city charter gives the owners of property an opportunity to be heard by the city council before assessing the costs of public improvements, the requirements of the constitution are satisfied, although the judgment of the city council is subject to revision by the board of public works.

5. Cities and Towns—Public Improvements—Assessment of Costs.

Where a city charter provides that the costs of paving streets shall be assessed upon all lots of land fronting on the street in proportion as the frontage of each lot is to the frontage of all, provided that if the lots are not of substantially equal depth they may be assessed to a substantially equal depth not less than 20 nor more than 150 feet, does not exempt from assessment strips of land fronting on the street of less depth than 20 feet, but such strips may be assessed in an equitable manner.

6. Same—Unjust Assessments—Parties.

Where a general rule of assessment of property for public improvements works an injustice, relief in proper circumstances may be granted, but owners of property not excessively assessed cannot complain because the property of other owners is unjustly assessed.

7. Same—Tender.

Where property is erroneously assessed for public improvements, the assessment being excessive, the owners cannot on that ground maintain an action to annul the entire assessment, and before they can maintain an action to annul the excessive part of the assessment, they must tender to the proper authorities the amount that should have been assessed.

8. Cities and Towns—Denver City Charter—Public Improvements—Constitutional Law.

The provisions of the charter of the city of Denver relative to public improvements, are not subject to the objection that the

people of the city are thereby deprived of the power to control their affairs with respect to local improvements in which the state has no interest, and are not, on that ground, in violation of the constitution.

9. Same.

The direction in the charter of the city of Denver as to how the apportionment of the costs of certain public improvements is to be made, is not the levy of a tax by the general assembly, but merely the adoption of a rule by that body for the apportionment of the costs of improvements by the municipal authorities.

10. Same.

Section 31, Art. 7, of the charter of Denver, providing that the city council shall pass an ordinance assessing the costs of public improvements against the real estate of the district, should not be construed as taking away from the city council its discretion and legislative power in passing such assessing ordinance and conferring the same upon the board of public works.

11. Cities and Towns—Public Improvements—Notice—Constitutional Law.

The absence from a city charter of a provision requiring the city authorities to give notice to property owners who file complaints and objections to assessments against their property for public improvements of the time and place of hearing of such complaints and objections, does not render the charter provisions relative to the assessment of the costs of public improvements unconstitutional.

12. Same.

If the complaints or objections filed by property owners to the assessments against their property for public improvements, are not such as the law contemplates shall be heard and determined by the city council sitting as a board of equalization, they are not entitled to notice of the time and place of hearing of such complaints.

13. Same—Ex Parte Findings.

Ex parte findings by a city council with respect to steps which the charter prescribes in relation to the assessment of the costs of public improvements, but which are not required because of any constitutional provision, are final when the charter so provides.

*Appeal from the District Court of Arapahoe County:*
*Hon. Booth M. Malone, Judge.*

Mr. H. M. ORAHOOD, Mr. H. L. RITTER and Mr. H. A. LINDSLEY, for appellants.

Mr. JOSHUA GROZIER, for appellees.

CHIEF JUSTICE GABBERT delivered the opinion of the court.

Appellees, as plaintiffs, brought an action in the court below, the purpose of which was to annul assessments levied upon their property to pay the expense of paving certain streets in what is known as the Eighth Avenue paving district, in the city of Denver. From a judgment in their favor the defendants appeal. The questions presented for consideration and determination are substantially as follows:

1. The sufficiency of the petitions by the property owners.

2. The legality of the publication of the ordinance creating the district.

3. The sufficiency of the notice to owners published by the board of public works.

4. That the charter provisions do not provide for due process of law.

5. That specific tracts were not benefited, or the assessments thereon were excessive.

6. The validity of the law creating the board of public works.

1. By the pleadings filed on behalf of the plaintiffs in the court below, the sufficiency of the petitions by the property owners was questioned as a fact, in that it was pleaded that a majority of such owners had not signed the petitions requesting the paving of Eighth Avenue. The charter provides that the board of public works may order the grading, curbing and paving of any street; provided, however, that the owners of a majority of the frontage to be assessed shall petition therefor.—Subdiv. 3, Sec. 3, Art. 7 (Sec. 160), Charter. It is no doubt true,

that conditions precedent which the law points out shall be observed by city authorities in ordering improvements, must be complied with, and that, as a general rule, their failure to do so does not give them jurisdiction to proceed. This general proposition, however, is not applicable in this case. The proceedings to pave the streets in a given district are to be initiated by the board in the manner indicated, but it is left with the city council to finally pass the ordinance creating the paving district. In performing this function it is left to that body to determine whether or not certain preliminary steps which the law requires to be taken by the board of public works have been complied with. The law further provides that the finding of the city council by ordinance that a petition was or was not filed, or was or was not subscribed by the required number of owners, shall be conclusive in every court or other tribunal. In the ordinance creating the paving district the city council did find, as a fact, that petitions for paving the street subscribed by the owners of a majority of the frontage to be assessed for paving the street in the paving district, were presented to the board of public works. It is only because of the provisions of the charter that a petition by the owners of property must be addressed to the board of public works before the latter are authorized to take the preliminary steps to pave the streets. The owners are not entitled to so petition by the fundamental law. The legislature might have dispensed with this prerequisite. The board of public works, it is true, would be without jurisdiction to take the preliminary steps in the absence of such petition, and no doubt, in such case, up to the time when the city council acts upon their recommendation as to the creation of a paving district and determines that the necessary petition subscribed by the owners has been presented to the board of pub-

.lic works, the latter could be enjoined from present-ing any recommendation to the city council; but there is a stage in the proceedings when the question of the sufficiency of the petition and the number of owners subscribing it is no longer open, if the city council, in passing the ordinance creating the dis-trict, has found the facts from which it can be inferred that the law in this respect has been com-plied with. This is a matter which the legislature, in its discretion, has the authority to commit to the finding and determination of the city authorities. Such a law is not unconstitutional because it does not deprive property owners of any rights which they are entitled to assert under the fundamental law of the state, and hence, the legislature has the authority to say at what time and by what body the findings of fact as to certain preliminary steps of the nature under consideration shall become final and conclu-sive.—*Dumars v. City, supra;* 2 Dillon, 4th ed., § 800; *Dennison v. City of Kansas City,* 95 Mo. 416.

In brief, the findings of fact by the city author-ities as to those matters which are not inherently jurisdictional are conclusive when the law authorizes them to determine such facts, and provides that their findings thereon shall be conclusive.

In *Dennison v. City, supra,* the charter provi-sions of the city under consideration provided that notice to owners should be given before findings of fact with respect to certain matters could be made. It was held that a hearing under these provisions must be afforded the owners, but the opinion dis-tinctly holds that the legislature could have con-ferred upon the city authorities the power to improve the streets of the city at the cost of the property owners without requiring the preliminary steps referred to. It further recognizes that the findings

of fact by the city council as to those matters committed to that body by law, are conclusive.

The many authorities cited by counsel for appellees to the effect that a failure upon the part of the city authorities to comply with prescribed preliminary steps, renders the proceedings void, are not in point. They are based upon the proposition that the steps prescribed must be observed, otherwise jurisdiction does not attach. Unlike the case at bar, however, they were decided in states where there was no provision of law whereby the findings of the city authorities that the preliminary steps had been taken, were conclusive.

2. The ordinance creating the district was published on Sunday. This publication was not illegal, for the reasons given in deciding this same question in *Dumars v. City, supra.*

3. Subsection 2, Sec. 3, Art. 7 (Sec. 160), Charter, requires the board of public works to give a specified notice before ordering improvements. This notice must be published for twenty days, notifying the owners that any complaints or objections relating to the matters contained in the notice that may be made in writing by the owners and filed with the board within thirty days from the first publication of such notice, will be heard and determined by the board. In the case at bar, the thirty days expired on Sunday, and by the terms of the notice, the complaints and objections contemplated were to be considered and determined by the board on Monday following. The time fixed under the notice for the hearing and determination of the complaints and objections which might be presented to the board, was not premature. The charter requires, when the notice so specifies, that the owners must lodge their objections with the board within thirty days from the date of the first publication. There is no provision

excluding any Sunday of such period. Where a statute declares that an act shall be done within a certain number of days, Sunday must be reckoned as one, though it happens to be the last, unless expressly or impliedly excluded.—*Vailes v. Brown,* 16 Colo. 562; *Ex parte Dodge,* 7 Cowan 147.

The Code provision, Sec. 382, has no application. That refers solely to the matter of computing time within which an act is to be done, as provided in the Code, with respect to procedure in courts of record.

4.   The general question, that the provisions of the charter give the owners an opportunity to be heard touching the assessments made upon their property to pay for local public improvements, has been discussed in the preceding cases of *City of Denver v. Kennedy, ante,* p. 80, and *City of Denver v. Dumars, ante,* p. 94; so that we shall not enter upon a further discussion of that question in the present case, except in so far as it relates to the proposition that because the judgment of the city council is not final, but is subject to the revision of the board of public works, the owners of property in a local improvement district are not afforded an opportunity to be heard touching the validity of an assessment, which the constitution requires. In discussing this question considerable stress seems to be laid upon the language of the court in the case of *Brown v. City of Denver,* 7 Colo. 305, wherein it is said, that the hearing contemplated must be "before a board or tribunal competent to administer proper relief." From that language it is argued that because the judgment of the city council is not final, but its action is subject to revision by the board of public works, that therefore it is not a competent tribunal. The word "competent," as employed in the Brown does not convey any such meaning, but; rather, ... the tribunal which the law designates shall be suitable.

and legally qualified to act. It does not necessarily follow that the judgment of such tribunal must be final. The main purposes of affording an owner a hearing upon the question of assessing his lands for special benefits, are to give him the opportunity to be heard upon the *quantum* of the tax which may be assessed upon his land, as well as its validity. If this hearing is afforded at some stage of the proceedings, he is given the opportunity to be heard which the fundamental law contemplates. The supreme court of the United States, in *Bauman v. Ross,* 167 U. S. 548, in discussing the question of what constitutes due process of law under statutory provisions, for assessing the cost of public improvements to the owners of land benefited thereby, says, at page 590:

"If the legislature, in taxing lands benefited by a highway or other public improvement, makes provision for notice by publication or otherwise to each owner of land, and for hearing him at *some* stage of the proceedings, upon the question what proportion of the tax shall be assessed upon his land, his property is not taken without due process of law."

Under that authority the provision for the hearing before the city council satisfies the requirement of the constitution with respect to due process of law. The owners are afforded full opportunity to be heard touching the question of the apportionment of the special tax upon their property before the levy is finally made. The remedy thus afforded them is appropriate, and the tribunal designated to hear their complaints and objections is a suitable one, and legally qualified to act.

5. Along Eighth avenue strips varying from four to nineteen feet in width, were assessed for paving as much as a thousand dollars per strip. The charter provides that the expense of paving shall be assessed upon all the lots and lands abutting on the

street improved in proportion as the frontage of each lot or tract of land is to the frontage of all the lots and lands so improved, with this proviso: That where the real estate abutting on the street improved consists of lots which are not of substantially equal depth, then the same may be assessed to a substantially equal depth, not less than twenty nor more than one hundred and fifty feet from the street improved, as the same may be determined by the board of public works.—Sec. 4, Art. 7 (Sec. 161), Charter. The contention of counsel for appellees, that these strips, being less than twenty feet in width, could not, under the charter, be assessed at all, is not tenable. The provision of the charter above referred to was for the purpose of enabling the city authorities to assess lots or strips of less than twenty feet in width in an equitable manner. The provision of the charter as to the general method which shall be employed in apportioning assessments, is *prima facie* valid (*City of Denver v. Knowles,* 17 Colo. 204); but where such rule works an injustice, relief in proper circumstances may be granted. None of the appellees, however, are in a position to invoke relief at the hands of the courts because of the alleged excessive assessment on these strips. Those whose property has been assessed, which is of substantially equal depth, cannot complain of the alleged excessive assessment on the strips, because no unjust burden is thereby imposed upon them. They cannot take advantage of a wrong against an owner which does not affect their rights. The owners of the strips are not entitled to any relief in the suit instituted by them, because the assessment against their property is not void, but merely erroneous by being excessive. They cannot escape taxation altogether because the amount assessed against their several tracts is greater than it should be. Notwithstanding this

alleged error, they are bound to pay what would be just and equitable. The amount which would have been proper to assess against these strips should have been tendered to the proper authorities before bringing a suit to annul the alleged excessive assessment. They made no such tender, and are, therefore, not in a position to maintain this action, or have the question litigated as to what would be a proper amount to assess against these strips.—*City of Denver v. Kennedy, ante,* p. 80.

6. The constitutionality of the law creating the board of public works in the city of Denver was determined by this court in *In Re Senate Bill,* 12 Colo. 188. The questions submitted to the court for determination in that matter were (1) whether such board could be appointed by the governor; and (2) whether the general assembly could so amend the charter which confers upon the board the power to expend the money of the city in making public improvements. Both these questions were answered in the affirmative, and the bill declared constitutional. In passing upon these questions the court held that municipal corporations are creatures of legislative enactment, and that the legislature, in the absence of inhibitory constitutional provisions, has the plenary power to adopt such measures as shall, in its judgment, be most conducive to their efficiency and usefulness; that there was no constitutional provision withholding from the general assembly the power to authorize the appointment by the governor of the members of the board of public works; that section 35, art. 5, which prohibits the general assembly from delegating to any special commission power to make, supervise, or interfere with municipal improvements, did not apply, because the board of public works under the law would become an integral part of the city government. No decision has since

been rendered by this court which in the slightest degree conflicts with the conclusion reached in the case, or the reasoning adopted. The court did say, however, in effect, in upholding the constitutionality of the bill, that it must not be understood as deciding that every direct legislative interference with local municipal affairs would be free from constitutional objection. It is now argued that the authority conferred upon the board of public works as evidenced by the details of the bill, as enacted in 1893, when the charter of the city of Denver was amended, is objectionable because thereby the people of the city of Denver are deprived of the power to control their affairs with respect to local improvements in which the state has no interest. If the board of public works is an integral part of the municipal government, that objection is certainly not tenable, except it be upon the theory that the details of the charter defining the powers of the board of public works have entirely deprived the municipal authorities elected by the people from any control over local improvements in which the state has no interest. An examination of the provisions of the charter respecting public improvements in which the board of public works has a voice, so far as called to our attention, demonstrates that the board is not omnipotent, as claimed, but that the municipal authorities, elected by the people of the city of Denver, are clothed with such authority that the board is powerless, without the sanction of the council. The charter provides that in directing public improvements certain initiatory steps, varying according to the character of the improvement, shall be taken by the board. When these proceedings have reached that stage where the board has concluded that in its judgment the improvement should be ordered, it recommends an ordinance which, however, can only be passed by the city coun-

cil. It is not obligatory upon the latter to pass such ordinance. If, after considering the necessity of the improvement, the cost thereof, and the materials which are to be employed in its construction, the district to be assessed with the expense—in short, any and all matters relating to the improvement—it is of the opinion that the improvements should not be made for any reason, it is in the discretion of the council to refuse to pass the ordinance. If such ordinance is passed by the city council the contract for the work is not let by the board of public works, but by the mayor. When the work is completed it devolves upon the board of public works to make a preliminary apportionment of the expense on the property benefited thereby. As to certain improvements the legislature has directed how such apportionment shall be made. This, however, is not the levy of a tax by the general assembly, but merely a rule adopted by that body for the apportionment of the cost of an improvement by the municipal authorities. This apportionment is certified by the board and filed with the clerk. The latter is then required to give notice to the owners of property to be charged with the expense of the improvement to file such complaints and objections touching the apportionment made as they may be advised. These objections are to be heard and determined by the city council, and it is only after they have passed upon such objections as the owners may have interposed to the recommendation of the board of public works on the apportionment of the cost of the improvement that the city council is authorized to pass the assessing ordinance which makes the apportionment a lien upon the property chargeable therewith. This action constitutes the levy. So it appears that at all times the board is powerless to order any improvements, create a district, or levy assessments, but that all

these matters are left to the action of the city council. But, it is argued that in reality and to all practical intents and purposes, it is the board of public works, and not the city council, which makes the assessment, because of the provisions in the charter—Sec. 31, Art. 7 (Sec. 188)—which counsel for appellees insist leaves the city council without any discretion in passing the assessing ordinance after the recommendations of the council have been reviewed by the board. Notwithstanding the apparently mandatory words employed in section 31 *supra,* we do not think that thereby the legislative power and discretion of the city council is taken away and vested in the board of public works, but that the former, in the exercise of its functions, is empowered to pass an assessing ordinance charging property with the cost of an improvement, which, according to its judgment, would be just and equitable.

In the case of the *Board of County Com'rs v. Smith,* 22 Colo. 534, it was held that "may" must be construed as "shall" when an act of the legislature can be thereby upheld, if a contrary construction would render it obnoxious to a constitutional inhibition. The converse of this must be likewise true; and hence we conclude that if the provisions of section 31 are objectionable because apparently mandatory upon the city council, they do not strip the latter of its legislative authority and discretion, but still leave it with the authority to pass an assessing ordinance in accordance with its own judgment. So far as urged upon our attention, we find no provisions of the charter relating to the board of public works or local public improvements which are unconstitutional.

It will not be practicable to attempt a review of the many authorities cited by counsel for appellees in support of their claim that the board of public

works is an unconstitutional body. In considering these cases, it must be borne in mind that the provisions of state constitutions other than our own were being considered, while in this instance it is our own constitution which is under consideration. The leading case on the subject, and one which has been referred to many times by the courts of last resort, is *The People v. Hurlbut,* 24 Mich. 44. In that case the validity of the law creating the board of public works of the city of Detroit was considered. A law had been enacted by the legislature which vested the appointment of such board outside of the municipal authorities. The particular provision of the constitution under consideration was to the effect that certain officers of cities should be elected, and that all other officers should be elected or appointed at such time and in such manner as the legislature should direct. Under this provision the court held that the power to appoint such officers as were not required to be elected must be lodged with the city authorities. That conclusion appears to have been reached upon the theory that the constitution of the state of Michigan contemplated, except as to matters in which the state had a direct interest, that the government of cities was vested exclusively in the municipal authorities. Whatever the general provisions of the constitution of the state of Mich igan may have been upon which this conclusion wa ; based, is immaterial, because it was held in this state, when the senate bill providing for a board of public works in the city of Denver was considered by this court, that there was no inhibition against the appointment of such board by the governor, if so authorized by the general assembly.—Sec. 6, Art. 4, Const. We know of no reason why this view should be changed, especially when it appears that the municipal authorities of the city, elected by the

people, do, in fact, control local public improvements by virtue of the charter provisions relating to the same.

Another case frequently cited is *The Board of Park Commissioners v. Common Council of Detroit,* 28 Mich. 228. That case has no application whatever to the present one. It was there held that the legislature had no authority to dictate to a city what local improvements should be constructed in which the state had no interest. From an examination of the case, it appears that an act of the legislature had conferred upon commissioners authority of such character with respect to certain local improvements that the duties of the city council as to those improvements were merely ministerial. The gist of the decision was, that the act of the legislature was, in effect, a dictation as to what improvements should be constructed. No such question as that is involved in the case at bar.

In the case of *State v. Mayor of Des Moines,* 103 Iowa 76, it was decided that the act of the legislature of Iowa, in conferring upon the board of library trustees appointed by the municipal authorities the power to fix absolutely and beyond the control of the council the amount of taxes to be raised for library purposes, was unconstitutional, because the legislature had no authority to delegate the power of taxation for strictly local municipal purposes to a body of persons not elected by the people. No authority of that character is attempted to be conferred upon the board of public works of the city of Denver.

Many cases, upholding our conclusion that the charter provisions considered are constitutional, might be cited, which go even further than we do with respect to the control of municipal corporations by the general assembly. Among these we

cite *Brown v. City of Galveston,* 75 S. W. 488, and *Riddell v. Moores,* 88 N. W. 242. In this latter case the previous holding of the supreme court of Nebraska, in *State v. Moores,* 55 Neb. 480, was over-ruled.

The judgment of the district court is reversed and the cause remanded, with directions to enter judgment for the defendants.

<em>Reversed and remanded.</em>

## On Petition for Rehearing.

*Per Curiam.*—Our conclusion, announced in *City v. Dumars, ante,* p. 94, that the absence of a provision in the charter for notice to those who may file objections and protests against the assessment, of the time and place where such objections would be heard and determined, does not render the charter unconstitutional, because the city authorities would have the power to make provision for such notice, is fully sustained by the case of *Paulsen v. Portland,* 149 U. S. 30. The opinion in that case, in discussing this question, holds, in substance, that the city is a miniature state, its council the legislature, and the charter its constitution, and it is enough if by the charter power is granted the municipal authorities to provide for notice to the tax payers before a special assessment becomes final.—See *Gilmore v. Hentig,* 33 Kan. 156; *Gatch v. City of Des Moines,* 63 Iowa 718.

It is now claimed the record discloses that no notice was, in fact, given to the tax payers filing protests and objections, and that no provision is made by ordinance or otherwise for such notice. We do not think the record supports this contention. The reference to the abstract—folio 442—does not refer to the subject of notice, but to the particular action taken by the municipal authorities in dispos-

ing of the protests and objections filed. It may be questionable if plaintiffs filed any protests or objections which the law contemplates shall be heard and determined by the city council sitting as a board of equalization. If they did not, then the matter of notice to them of a hearing on such as they did file, would be immaterial.

It is urged we erred in holding that the findings of the city council without notice or opportunity for the tax payers to be heard on the sufficiency of the petition was conclusive upon the property owners. Findings on questions of fact touching matters inherently jurisdictional would probably not be conclusive without notice and opportunity to be heard, but *ex parte* findings with respect to steps which the charter prescribes, and which are not required because of any constitutional provision, are final when the charter so provides. Were it not for the provision in the charter authorizing the municipal authorities to find *ex parte* on the sufficiency of the petition, no doubt such finding in the absence of notice to the tax payers, and opportunity to be heard, could be attacked collaterally, but as the finding relates to a matter which is not inherently jurisdictional, and as the charter authorizes it to be made in the manner it was, the facts upon which it is based cannot be questioned. The authorities cited by counsel do not hold to the contrary. *Mulligan v. Smith,* 59 Cal. 206; *Zeigler v. Hopkins,* 117 U. S. 683, and *Miller v. City of Amsterdam,* 149 N. Y. 288, are cases holding that findings of fact by the municipal authorities without notice to the tax payers were not binding upon the latter, but it will be observed that in each of these cases the city authorities were not authorized to determine the questions *ex parte.*

*Petition for rehearing denied.*